KUSCHINSKI *v.* EQUITABLE & CENTRAL TRUST CO.

1. MORTGAGES—FORECLOSURE—EQUITY—LACHES.

Holder of title by quitclaim deed to premises sold on foreclosure after he had obtained restraining order, but who, although he knew of sale and had funds available with which to pay mortgage has never offered to do so, was warned by mortgagee to act promptly, but waited over 13 months and until 10 days before expiration of period of redemption before commencing suit to set aside deed *held*, because of laches and lack of equity, not entitled to have deed, executed on dissolution of restraining order, set aside.

2. Same—Foreclosure Sale—Sheriff's Deed—Restraining Order.
    Foreclosure sale held, and sheriff's deed given, notwithstanding
    a restraining order are voidable rather than void.

3. Same—Setting Aside Foreclosure Sale.
    Party seeking to set aside foreclosure sale must act promptly
    after he becomes aware of the facts upon which he bases his
    complaint.

Appeal from Wayne; Toms (Robert M.), J. Submitted June 11, 1936. (Docket No. 98, Calendar No. 39,031.) Decided September 2, 1936.

Bill by Leo Kuschinski against Equitable & Central Trust Company, a Michigan corporation, and others to set aside a sheriff's deed and for other relief. Bill dismissed. Plaintiff appeals. Affirmed.

*S. Brooks Barron,* for plaintiff.

*Douglas, Barbour, Desenberg & Purdy,* for defendants.

Butzel, J. Defendant had a mortgage on property improved with two stores and two apartments in Detroit. Plaintiff held title to the property by virtue of a quitclaim deed dated April 10, 1934, and recorded over a year later. On May 15, 1934, shortly after the date of plaintiff's deed, defendant began foreclosure proceedings by advertisement, the sale being set for August 10, 1934. On August 6, 1934, plaintiff filed a petition for a moratorium and a restraining order was issued enjoining the sale. The order was served on an officer of the company the following day and, upon his noticing that it was not returnable until August 22, 1934, he laid it aside for the time being and thus delayed informing defendants' attorneys who were in charge of the foreclosure pro-

ceedings.  As a result, the sale took place at the time and place set for it.

Shortly thereafter the deputy sheriff, on his return to his office, was notified of the injunction and he refused to issue a deed until the further order of the court.  However, at a hearing on September 13, 1934, the judge refused to grant a moratorium and ordered that the ''restraining order heretofore issued  *  *  *  be dissolved and held for naught.''  A few days later the deputy sheriff, being somewhat concerned over the situation, communicated with the trial judge who had issued the original restraining order and was assured that he would not be in a worse position if he proceeded to execute a sheriff's deed, the judge stating to him that the court would not consider such an act as contumacious.  At that time plaintiff's brother, who acted as his attorney, stated to the defendants' attorneys that he would seek to have the deed set aside and was told that he had better proceed at once, otherwise he would be guilty of laches.  He, however, waited until September 9, 1935, almost an additional year, and about 10 days before the date of the expiration of the period of redemption and over 13 months after the date of sale, before he began the present suit to set aside the sheriff's deed on the ground that it was void because the sale was held contrary to the provisions of the restraining order.  Notwithstanding the testimony of a witness to the effect that both attorney for defendants and the sheriff knew of the injunction before the sale, the trial court believed testimony to the contrary and denied plaintiff relief.

In the sworn bill of complaint plaintiff stated that at the time of the sale, he had sufficient funds on hand so as to bid in the property for the amount of the mortgage debt and the testimony shows that he continued to have such amount on hand up to and includ-

ing the time of the hearing of the instant case. His attorney and brother was present at the time of the sale, but made no bid. Plaintiff never offered to pay the mortgage debt.

A deed given notwithstanding a restraining order is not invalid under all circumstances. The correct rule was recently stated in the case of *In re Petition of Chaffee,* 262 Mich. 291, where foreclosure took place against property in the hands of a receiver without the court's consent when it was fully known to the mortgagee that the receivership was pending. The court said:

"That the prosecution of the foreclosure was a contempt is clear, and we are not disposed to interfere with the court's decree voiding the foreclosure sale. However, decision here is not to be construed as holding that sales so made are necessarily void rather than voidable, or that the rights of the receiver and the dignity of the court could not have been fully sustained by enjoining the purchaser at the foreclosure sale from instituting proceedings to dispossess the receiver."

Our attention is called to a few isolated cases where under a different factual set-up, such sales have been held to be void. The better rule seems to be that such sale is voidable and not void. *American Trust Co.* v. *De Albergaria,* 123 Cal. App. 76 (10 Pac. [2d] 1016); *Powell* v. *Bank of Lemoore,* 125 Cal. 468 (58 Pac. 83); *Holden* v. *Houck,* 176 N. C. 235 (96 S. E. 1025). Plaintiff was not misled into believing that no sale had been had because of the order restraining such action. He knew of the sale and, although he was warned by defendants' attorneys, violated the rule that in seeking to set aside a foreclosure sale, the moving party must act promptly after he becomes aware of the facts upon which he bases his complaint.

*Lyon* v. *Brunson,* 48 Mich. 194. The total lack of
equity in plaintiff's claim, his failure to pay anything
on the mortgage debt and his laches preclude him
from any relief in a court of equity.

The decree of the lower court dismissing the bill of
complaint is affirmed, with costs.

NORTH, C. J., and FEAD, WIEST, BUSHNELL, SHARPE,
and TOY, JJ., concurred. POTTER, J., did not sit.