MAEILYN Kelly, J.
At issue in this case is the manner in which defendant JPMorgan Chase Bank, N.A. (Chase), the successor in interest to Washington Mutual Bank (WaMu), acquired plaintiffs’ mortgage. Plaintiffs’ mortgage was among the assets held by WaMu when it collapsed in 2008 in the largest bank failure in American history.[1] Specifically, we must determine whether defendant acquired plaintiffs’ mortgage by “operation of law” and, if so, whether MCL 600.3204(3), which sets forth requirements for foreclosing by advertisement, applies to the acquisition of a mortgage by operation of law. We asked the parties to address whether, if the foreclosure proceedings that defendant initiated were flawed, the subsequent foreclosure is void ab initio or merely voidable.[2]
We hold that defendant did not acquire plaintiffs’ mortgage by operation of law. Rather, defendant acquired that mortgage through a voluntary purchase agreement. Accordingly, defendant was required to comply with the provisions of MCL 600.3204. We further hold, differently than did the Court of Appeals, that the foreclosure sale in this case was voidable rather than void ab initio. Accordingly, we affirm in part and *103 reverse in part the judgment of the Court of Appeals and remand the case to the trial court for further proceedings.
I. factual background and procedural history
On July 11, 2007, plaintiffs obtained a loan from WaMu in the amount of $615,000 to refinance their residence. As security for the loan, plaintiffs granted a mortgage on the property to WaMu, which properly recorded it later that month.
When WaMu collapsed on September 25, 2008, the federal Office of Thrift Management closed the bank and appointed the Federal Deposit Insurance Corporation (FDIC) as receiver for its holdings. That same day, the FDIC, acting as WaMu’s receiver, transferred virtually all of WaMu’s assets to defendant under authority set forth in the Financial Institutions Reform, Recovery, and Enforcement Act of 1989.[3] Under 12 USC 1821, the FDIC is empowered to transfer the assets of a failed bank “without any approval, assignment, or consent . . . .”[4] However, in this case, it did not avail itself of that authority. Instead, the FDIC sold WaMu’s assets to defendant pursuant to a purchase and assumption (P&A) agreement.
Plaintiffs sought a loan modification in 2009 because they were having difficulty making their mortgage payments. They assert that a WaMu representative advised them that they were ineligible for a loan modification because they were not at least three months in arrears on their payments. Plaintiffs claim that on the basis of this information, they deliberately allowed their mortgage to become delinquent to qualify for a loan *104 modification. They further allege that they signed documents to complete the modification and that their attorney assured them that their loan modification had been approved.
Defendant notified plaintiffs in May 2009 that it was foreclosing on their property. Plaintiffs contend that they attempted to ascertain whether the foreclosure notice had been sent in error in light of the purported loan modification and were advised by a WaMu representative “not to worry.” Defendant published the required notice of foreclosure in May and June 2009. The property was sold to defendant at a sheriffs sale on June 26, 2009.
Plaintiffs filed suit on November 30, 2009, seeking to set aside the sale on the ground that they had received a loan modification and that defendant had not bid fair market value for the property at the sale. Defendant responded with a motion for summary disposition. The trial court granted summary disposition to defendant. It ruled that defendant had acquired plaintiffs’ mortgage by operation of law. As a consequence, MCL 600.3204(3), which requires that a mortgage assignment be recorded before initiation of a foreclosure by advertisement, was inapplicable.
Plaintiffs appealed, pursuing only their claim that defendant had failed to comply with MCL 600.3204(3) and that, as a result, the foreclosure sale was void ab initio. The Court of Appeals agreed. It held that MCL 600.3204(3) applied to defendant because defendant was not the original mortgagee and acquired the loan by assignment rather than by operation of law.[5] It reasoned that the FDIC, as receiver of WaMu’s assets, had acquired those assets by operation of law, but not *105 defendant, which had purchased them from the FDIC.[6] Hence, the Court of Appeals held that defendant had a statutory obligation to record the assignment of plaintiffs’ mortgage to it before foreclosing by advertisement.[7] Moreover, the Court of Appeals held that defendant’s failure to record the assignment rendered the sheriffs sale void ab initio.[8] Accordingly, it remanded the case to the trial court for entry of judgment in favor of plaintiffs.
Defendant filed an application for leave to appeal in this Court. We granted its application.[9]
II. ANALYSIS
A. LEGAL BACKGROUND
We review de novo the grant or denial of a motion for summary disposition.[10] We use the same standard to review questions of statutory interpretation.[11]
At the heart of this dispute are the statutory provisions governing the foreclosure of mortgages by advertisement.[12] MCL 600.3204 sets forth the requirements, providing in relevant part:
(1) Subject to subsection (4) [providing certain exceptions inapplicable to this case], a party may foreclose a mortgage by advertisement if all of the following circumstances exist:
*106 (a) A default in a condition of the mortgage has occurred, by which the power to sell became operative.
(b) An action or proceeding has not been instituted, at law, to recover the debt secured by the mortgage or any part of the mortgage; or, if an action or proceeding has been instituted, the action or proceeding has been discontinued; or an execution on a judgment rendered in an action or proceeding has been returned unsatisfied, in whole or in part.
(c) The mortgage containing the power of sale has been properly recorded.
(d) The party foreclosing the mortgage is either the owner of the indebtedness or of an interest in the indebtedness secured by the mortgage or the servicing agent of the mortgage.
(3) If the party foreclosing a mortgage by advertisement is not the original mortgagee, a record chain of title shall exist prior to the date of sale under [MCL 600.3216] evidencing the assignment of the mortgage to the party foreclosing the mortgage.
Thus, as a general matter, a mortgagee cannot validly foreclose a mortgage by advertisement before the mortgage and all assignments of that mortgage are duly recorded.
This common understanding of the requirement of recordation before foreclosure by advertisement was also set forth in a 2004 Attorney General opinion. Our Attorney General stated that “a mortgagee cannot validly foreclose a mortgage by advertisement unless the mortgage and all assignments of that mortgage (except those assignments effected by operation of law) are entitled to be, and have been, recorded.”[13] In 2004, the operative language now set forth in *107 MCL 600.3204(3) was found in MCL 600.3204(1)(c).[14]
The general powers of the FDIC in its capacity as conservator or receiver[15] that are germane to this case are set forth in 12 USC 1821. Specifically, 12 USC 1821(d)(2) describes the manner in which the FDIC acquires assets. It provides, in relevant part:
(A) Successor to institution. — The [FDIC] shall, as conservator or receiver, and by operation of law, succeed to—
(i) all rights, titles, powers, and privileges of the insured depository institution, and of any stockholder, member, accountholder, depositor, officer, or director of such institution with respect to the institution and the assets of the institution; and
(ii) title to the books, records, and assets of any previous conservator or other legal custodian of such institution.
Subsection (d)(2) also sets forth the FDIC’s authority to dispose of a failed bank’s assets, providing in pertinent part:
*108 (G) Merger; transfer of assets and liabilities. — •
(i) In general. — The [FDIC] may, as conservator or receiver—
(I) merge the insured depository institution with another insured depository institution; or
(II) subject to clause (ii), transfer any asset or liability of the institution in default (including assets and liabilities associated with any trust business) without any approval, assignment, or consent with respect to such transfer.
(ii) Approval by appropriate Federal banking agency.- — No transfer described in clause (i)(II) may be made to another depository institution ... without the approval of the appropriate Federal banking agency for such institution.
B. APPLICATION
Against this backdrop, we consider the manner in which defendant acquired plaintiffs’ mortgage and whether the requirements of MCL 600.3204 apply to that acquisition.
1. DEFENDANT DID NOT ACQUIRE PLAINTIFFS’ MORTGAGE BY OPERATION OF LAW
Two transfers of plaintiffs’ mortgage occurred on September 25, 2008. The first, between WaMu and the FDIC, was consummated when the Office of Thrift Management closed WaMu and appointed the FDIC as its receiver. This transfer took place pursuant to 12 USC 1821 (d)(2)(A)(i) and (ii), which provide that the FDIC “shall, as conservator or receiver, and by operation of law, succeed to . . . all rights, titles, powers, and privileges of the insured depository institution . . . and title to the books, records, and assets of any previous conservator or other legal custodian of such institution.” (Emphasis added.) Thus, when the FDIC succeeded to WaMu’s assets, which included plaintiffs’ *109 mortgage, it did so by clear operation of a statutory provision — 12 USC 1821(d)(2)(A). With respect to this transfer, the FDIC acquired plaintiffs’ mortgage by operation of law.
But the FDIC only briefly possessed WaMu’s assets, including plaintiffs’ mortgage. It immediately transferred those assets to defendant. The dispositive question in this case is whether the second transfer of WaMu’s assets — the transfer from the FDIC to defendant — took place by operation of law.
The seminal case discussing the term “operation of law” in the context of foreclosures by advertisement is Miller v Clark.[16] In Miller, a mortgagee died intestate. The Court considered whether the guardian of his heirs was obliged to record an assignment of the mortgage before foreclosing on it by advertisement. The Court held:
The authority to foreclose such mortgages by advertisement is purely statutory, and all the requirements of the statute must be substantially complied with. To entitle a party to foreclose in this manner it is required, among other things, that the mortgage containing such power of sale has been duly recorded; and if it shall have been assigned, that all the assignments thereof shall have been recorded. And also that the notice shall specify the names of the mortgagor and the mortgagee, and of the assignee of the mortgage, if any.
The assignments which are required to be recorded are those which are executed by the voluntary act of the party, and this does not apply to cases where the title is transferred by operation of law, the object of the statute being to restrict the execution of the power to the owner of the legal title to the instrument/[17]
*110 Thus, Miller contemplated that a transfer occurs by operation of law when it takes place involuntarily or as the result of no affirmative action on the part of the transferee.
Miller’s interpretation of when a transfer occurs by “operation of law” is consistent with Black’s Law Dictionary’s definition of the expression. Black’s defines “operation of law” as “[t]he means by which a right or a liability is created for a party regardless of the party’s actual intent.”[18] Similarly, this Court has long understood the expression to indicate “the manner in which a party acquires rights without any act of his own.”[19] Accordingly, there is ample authority for the proposition that a transfer that takes place by operation of law occurs unintentionally, involuntarily, or through no affirmative act of the transferee.
Applying this proposition, we hold that the transfer of WaMu’s assets from the FDIC to defendant did not take place by operation of law. Defendant acquired WaMu’s assets from the FDIC in a voluntary transaction; defendant was not forced to acquire them. Instead, defendant took the affirmative action of voluntarily paying for them. Had defendant not willingly purchased them, it would not have come into possession of plain *111 tiffs’ mortgage. WaMu’s assets did not pass to defendant “without any act of [defendant’s] own”[20] or “regardless of [defendant’s] actual intent.”[21] Accordingly, the Court of Appeals correctly concluded that defendant did not acquire WaMu’s assets by operation of law.
Defendant and the dissent contend that the transfer occurred by operation of law because, although not a merger, the transfer was analogous to a merger and should be treated as one. We find this reasoning unpersuasive.[22] 12 USC 1821 (d) (2) (G) (i) (I) empowered the FDIC to merge WaMu with another financial institution such as defendant. Had a merger occurred under that statutory provision, defendant would have a strong argument that it had merely stepped into the shoes of WaMu. It would have had no need to engage in a transfer of any of WaMu’s assets. And the transaction would have occurred without any voluntary or affirmative action by defendant, given that the FDIC may, at its discretion, merge a failed bank with another institution. The transaction could have constituted a transfer by operation of law under traditional banking and corporate law.[23]
*112 But here, a merger did not occur. In selling WaMu’s assets to defendant, the FDIC relied on a different statutory provision, 12 USC 1821(d)(2)(G)(i)(II), which allows the FDIC to “transfer” the assets and liabilities of failed institutions. Hence, although the FDIC could have effectuated a merger in reliance on subsection (d) (2) (G) (i) (I), it explicitly chose not to do so. Indeed, the FDIC submitted an affidavit to the Court that describes the transaction, specifically citing the subsection of the statute authorizing transfers, rather than the subsection authorizing mergers.[24] Unlike the dissent, we will not conclude that a merger took place when the FDIC so clearly chose to engage in a different type of transaction under a different statutory provision.[25]
In sum, the Court of Appeals correctly held that defendant did not acquire WaMu’s assets by operation of law.
*113 2. DEFENDANT’S FAILURE TO COMPLY WITH MCL 600.3204(3) RENDERS THE FORECLOSURE OF PLAINTIFFS’ PROPERTY VOIDABLE
As noted earlier, MCL 600.3204 sets forth several requirements for foreclosing a property by advertisement. Subsection (3) requires a party that is not the original mortgagee to record the assignment of the mortgage to it before foreclosing. Because defendant acquired plaintiffs’ mortgage through a voluntary transfer, and given that it was not the original mortgagee, it was subject to the recordation requirement of MCL 600.3204(3). Having made that determination, we must now decide the effect of defendant’s failure to comply with that provision.[26]
With meager supporting analysis, the Court of Appeals concluded that defendant’s failure to record its mortgage interest before initiating foreclosure proceed *114 ings rendered the foreclosure sale void ab initio. It cited one case in support of its holding, Davenport v HSBC Bank USA.[27] There, the plaintiff, who was in default on her mortgage, brought an action to void a foreclosure. The defendant, who was the successor in interest of the initial mortgagee, had initiated the foreclosure proceeding several days before acquiring its interest in the mortgage. The trial court granted summary disposition to defendant.
The Court of Appeals reversed the trial court’s ruling. It held that the defendant’s failure to comply with MCL 600.3204(1)(d), which requires that a party own some or all of the indebtedness before foreclosing by advertisement, rendered the foreclosure proceedings void ab initio.[28] But it cited not a single case in support of the proposition that the foreclosure was void ab initio as opposed to merely voidable.
Davenport’s holding was contrary to the established precedent of this Court. We have long held that defective mortgage foreclosures are voidable. For example, in Kuschinski v Equitable & Central Trust Co,[29] the Court considered a foreclosure undertaken in violation of a restraining order. The Court held:
Our attention is called to a few isolated cases where under a different factual set-up, such sales have been held to be void. The better rule seems to be that such sale is voidable and not void. Plaintiff was not misled into believing that no sale had been had because of the order restraining such action. He knew of the sale and, although he was warned by defendants’ attorneys, violated the rule *115 that in seeking to set aside a foreclosure sale, the moving party must act promptly after he becomes aware of the facts upon which he bases his complaint. The total lack of equity in plaintiffs claim, his failure to pay anything on the mortgage debt and his laches preclude him from any relief in a court of equity.[30]
Similarly, in Feldman v Equitable Trust Co, the Court held that a foreclosure commenced without first recording all assignments of the mortgage is not invalid if the defect does not harm the homeowner.[31] This Court, the Court of Appeals, and the United States District Court for the Eastern District of Michigan have consistently used this interpretation.[32] We continue to adhere to it.
Therefore, we hold that defects or irregularities in a foreclosure proceeding result in a foreclosure that is voidable, not void ab initio. Because the Court of Appeals erred by holding to the contrary, we reverse that portion of its decision. We leave to the trial court the determination of whether, under the facts presented, the foreclosure sale of plaintiffs’ property is voidable. In this regard, to set aside the foreclosure sale, plaintiffs must show that they were prejudiced by defendant’s failure to comply with MCL 600.3204. To *116 demonstrate such prejudice, they must show that they would have been in a better position to preserve their interest in the property absent defendant’s noncompliance with the statute.[33]
III. RESPONSE TO THE DISSENT
At the outset, the dissent claims that the FDIC has more familiarity with the type of transaction that occurred in this case than does this Court. We do not underestimate the FDIC’s grasp of what is involved in the liquidation of failed banking institutions. However, we are more familiar with the judicial review process of interpreting statutes and applying them to a set of facts than is an executive agency.
The dissent states that pursuant to 12 USC 1821(d)(2)(G)(i)(I) and (II), the FDIC may merge a failed bank with or transfer a failed bank’s assets to a financially healthy bank. It claims that, “[u]nder either provision, the statute provides for transfers by operation of law.”[34] This is simply false. Neither statutory provision indicates that either a merger or a transfer takes place by operation of law. The language of 12 USC 1821(d)(2)(G) is in stark contrast with that of 12 USC 1821(d)(2)(A), which explicitly provides that the FDIC succeeds to various property interests by operation of law. The dissent compounds its error by conflating the FDIC’s statutory authority to engage in a transaction involving a failed bank’s assets and liabilities with the nature of the transaction itself.[35]
*117 More problematic, however, is the dissent’s failure to analyze the issue most central to this case: what is meant by a transfer by “operation of law.” The dissent states as an ipse dixit that “a transfer by operation of law need not be involuntary . .. .”[36] It cites not a tracé of authority for this fiat. The dissent would also analyze whether a transaction took place by operation of law through the lens of the subjective intent of a related party.[37] This cannot be.[38]
By contrast, in giving meaning to the phrase “operation of law,” we have carefully considered decades-old precedent from this Court, as well as consulted a legal dictionary. We defer to these established authorities for the proposition that a transfer that takes place by operation of law is one that occurs unintentionally, involuntarily, or through no affirmative act of the transferee.
Finally, the dissent also errs in its alternative argument that defendant is exempt from MCL 600.3204(3) even if the transfer in question did not occur by operation of law. This argument hinges on the belief that defendant did not *118 acquire its interest in plaintiffs’ mortgage by assignment. The statute plainly indicates that “a record chain of title shall exist” if the party foreclosing by advertisement “is not the original mortgagee.” It is undisputed that defendant is not the original mortgagee. Thus, regardless of why no chain of title exists, defendant cannot foreclose by advertisement.[39]
IV CONCLUSION
Defendant acquired plaintiffs’ mortgage through a voluntary purchase agreement with the FDIC. It follows that it did not acquire the mortgage by operation of law. Accordingly, defendant was required to record its interest in compliance with the provisions of MCL 600.3204 before foreclosing on the property by advertisement. We further hold, differently than did the Court of Appeals, that the sale of the foreclosed property was voidable rather than void ab initio. Accordingly, we affirm in part and reverse in part the judgment of the Court of Appeals and remand the case to the trial court for further proceedings. We direct the trial court to expedite its decision on remand.
We do not retain jurisdiction.
Cavanagh, Markman, and Hathaway, JJ., concurred with Marilyn Kelly, J.

 See Dash & Sorkin, Government Seizes WaMu and Sells Some Assets, NY Times, September 25, 2008, available at <http://www.nytimes.com/ 2008/09/26/business/26wamu.html?pagewanted=all> (accessed December 20, 2012).

 “Void ab initio” is defined as “[n]ull from the beginning, as from the first moment when a contract is entered into.” Black’s Law Dictionary (9th ed). By contrast, “voidable” is defined as “[v]alid until annulled; [especially], (of a contract) capable of being affirmed or rejected at the option of one of the parties.” Id.

 PL 101-73, 103 Stat 183 et seq.

 12 USC 1821(d)(2) (G) (i) (II).

 Kim v JPMorgan Chase Bank, NA, 295 Mich App 200, 207; 813 NW2d 778 (2012).

 Id.

 Id. at 208.

 Id.

 Kim v JPMorgan Chase Bank, NA, 491 Mich 915 (2012).

 Briggs Tax Serv, LLC v Detroit Pub Sch, 485 Mich 69, 75; 780 NW2d 753 (2010).

 Midland Cogeneration Venture Ltd Partnership v Naftaly, 489 Mich 83, 89; 803 NW2d 674 (2011).

 MCL 600.3201 et seq.

 OAG, 2003-2004, No 7147, p 93 (January 9, 2004).

 MCL 600.3204, as amended by 1994 PA 397, provided, in relevant part:
(1) A party may foreclose by advertisement if all of the following circumstances exist:
(c) The mortgage containing the power of sale has been properly recorded and, if the party foreclosing is not the original mortgagee, a record chain of title exists evidencing the assignment of the mortgage to the party foreclosing the mortgage.
Subsequent amendments by 2004 PA 186 and 2009 PA 29 produced the current language.

 The Federal Deposit Insurance Act (FDIA), 12 USC 1811 et seq., governs the actions of the FDIC. The FDIA directs the FDIC to operate in two separate and legally distinct capacities: FDIC corporate and FDIC acting as receiver. FDIC corporate functions as an insurer of bank deposits. See 12 USC 1821(a). This function of the FDIC is not at issue here.

 Miller v Clark, 56 Mich 337; 23 NW 35 (1885).

 Id. at 340-341 (emphasis added) (quotation marks omitted). The statute governing foreclosures by advertisement in effect when Miller was decided in 1885, 1871 CL 6913, was considerably different from the current statute, MCL 600.3204.

 Black’s Law Dictionary (9th ed) (emphasis added).

 Merdzinski v Modderman, 263 Mich 173, 175; 248 NW 586 (1933) (emphasis added) (citation and quotation marks omitted); see also Union Guardian Trust Co v Emery, 292 Mich 394, 406-407; 290 NW 841 (1940) (holding in a discussion of a constructive trust that, “[w]hile the term ‘constructive trust’ has been broadly defined as a trust raised by construction of law, or arising by operation of law, as distinguished from an express trust, in a more restricted sense and contradistinguished from a resulting trust it has been variously defined as a trust not created by any words, either expressly or impliedly evincing a direct intention to create a trust, but by the construction of equity in order to satisfy the demands of justice; one not arising by agreement or intention, but by operation of law”) (emphasis added).

 Merdzinski, 263 Mich at 175.

 Black’s Law Dictionary (9th ed).

 We also find unpersuasive the FDIC’s characterization of the transfer as one that occurred by operation of law. We have given respectful consideration to the FDIC’s position, but we do not resort to it for guidance in this matter due to its lack of persuasiveness. In addition, the authorities cited by the dissent in support of its contention that the FDIC’s position should be accorded respectful consideration, post at 124 n 10, are inapposite. This case is concerned with Michigan law, not federal law. The dispositive issue is whether defendant satisfied MCL 600.3204, which implicates whether the transfer from the FDIC to defendant occurred by operation of law. Whether the transfer occurred by operation of law is governed by Michigan law.

 See, e.g., 12 USC 215a(e) (“All rights, franchises, and interests of the individual merging banks or banking associations in and to every type of *112 property (real, personal, and mixed) and choses in action shall be transferred to and vested in the receiving association by virtue of such merger without any deed or other transfer.”); MCL 450.1724(1)(b) (“When a merger takes effect,... the title to all real estate and other property and rights owned by each corporation party to the merger are vested in the surviving corporation without reversion or impairment.”).

 The affidavit provides, in relevant part:
3. As authorized by ... 12 U.S.C. § 1821(d)(2)(G)(i)(II), the FDIC, as receiver of Washington Mutual, may transfer any asset or liability of Washington Mutual without any approval, assignment, or consent with respect to such transfer.
4. Pursuant to the terms and conditions of a [P&A] Agreement between the FDIC as receiver of Washington Mutual and [defendant] .. . [defendant] acquired certain of the assets, including all loans and all loan commitments, of Washington Mutual.
5. As a result, on September 25, 2008, [defendant] became the owner of the loans and loan commitments of Washington Mutual by operation of law.

 Although the FDIC’s affidavit purports that the sale of WaMu’s assets to defendant was effected by operation of law, the FDIC may not by unilateral declaration make it so.

 Because we have held that defendant acquired plaintiffs’ mortgage through a voluntary transfer, we need not decide whether MCL 600.3204(3) applies to the acquisition of a mortgage by operation of law. The dissent must decide this issue to support its position. In doing so, it acknowledges that changes have been made to the language of the foreclosure-by-advertisement statute during the 127 years since Miller was decided. It mentions that both versions “required the recordation of mortgage assignments before foreclosure was permitted.” But it overlooks the fact that the 1871 statute required the recordation of assignments only “if [the mortgage] shall have been assigned,” 1871 CL 6913, whereas the current statute, MCL 600.3204(3), requires recordation if the foreclosing party “is not the original mortgagee.” These are two distinct triggering mechanisms for recordation. Moreover, the fact that in the 1871 statute the recordation requirement was triggered by assignment seems particularly significant. “Assignment” is defined as “1. The transfer of rights or property. 2. The rights or property so transferred.” Black’s Law Dictionary (9th ed). By contrast, as noted earlier, “operation of law” expresses devolution of a right absent the acts of a party, such as assignment, to obtain them. Thus, the Miller Court correctly focused on the voluntariness of transfer and concluded that involuntary transfers by operation of law did not trigger the recording requirement because they did not constitute assignments. The same conclusion cannot be made when construing the language of MCL 600.3204(3).

 Davenport v HSBC Bank USA, 275 Mich App 344; 739 NW2d 383 (2007).

 Id. at 347-348.

 Kuschinski v Equitable & Central Trust Co, 277 Mich 23; 268 NW 797 (1936).

 Id. at 26-27 (emphasis added) (citations omitted).

 Feldman v Equitable Trust Co, 278 Mich 619, 624-625; 270 NW 809 (1937).

 See, e.g., Fox v Jacobs, 289 Mich 619, 624; 286 NW 854 (1939) (holding that the failure of a foreclosure notice to specify an assignee of the mortgage, as required by statute, did not render the foreclosure sale absolutely void, but only voidable); Sweet Air Investment, Inc v Kenney, 275 Mich App 492, 502; 739 NW2d 656 (2007) (holding that a defect in notice renders a foreclosure sale voidable and not void); Jackson Investment Corp v Pittsfield Prod, Inc, 162 Mich App 750, 756; 413 NW2d 99 (1987) (“We conclude that the trial court correctly held that the notice defect rendered the [foreclosure] sale voidable and not void.”); Worthy v World Wide Fin Servs, Inc, 347 F Supp 2d 502, 511 (ED Mich, 2004) (“[E]ven if Defendant failed to comply with the foreclosure notice statute, I would not have sufficient grounds to invalidate the foreclosure sale, because of a lack of prejudice.”).

 See, generally, Kuschinski, 277 Mich at 26-27; Sweet Mr, 275 Mich App at 503; Jackson, 162 Mich App at 756.

 Post at 125.

 Similarly, the dissent’s focus on which of WaMu’s assets the FDIC transferred to defendant is irrelevant. It is the nature of the transaction, not its contents, that informs our conclusion that the transfer did not take place by operation of law.

 Post at 128.

 In effect, the dissent’s definitionless approach to this case would redefine the phrase “operation of law” to mean “as provided by law.” The dissent essentially argues that because the FDIC, by statute, may liquidate failed banks, when it does so the resulting transfer occurs by operation of law. Under the dissent’s approach, any lawful transaction would constitute a transfer by operation of law. It fails to recognize this contradiction.

 The dissent also attempts to undermine our definition of “operation of law” by arguing that transfers accomplished by intestate succession occur by operation of law. It posits that, contrary to our definition of the phrase, those transfers cannot be completed without the affirmative act of a recipient in accepting the property. This position is incorrect. In intestacy succession, if an heir takes no affirmative action, he or she may acquire rights to a decedent’s property. It is only if an heir takes the affirmative step of disclaiming his or her inheritance that it does not pass to that individual. See MCL 700.2902(1).

 The dissent opines that nothing exists that could be recorded in the chain of title evidencing the assignment of interest. This is untrue. For example, defendant could file a copy of the P&A agreement with the register of deeds.