MARKMAN, J.
{concurring). I fully concur in the analysis and results of the majority opinion and write separately only to supplement that opinion with the following observations:
*119 First, it must be emphasized that the dissent fails entirely to provide an affirmative definition of the legal term of art that is at the heart of this dispute: “operation of law.” The closest the dissent comes is merely stating in the negative that “a transfer by operation of law need not be involuntary . . . .” Post at 128. However, it would be more instructive for the development of our law to know what affirmative meaning the dissent would ascribe to “operation of law.” To the extent that some definition can be inferred from the dissent, that definition is, in my judgment, plainly incorrect. As the majority points out, the dissent essentially seeks to redefine the term “operation of law” to mean “as provided by law.” That is, the dissent argues that because the FDIC acted pursuant to or in accordance with federal statutes, its actions necessarily occurred by “operation of law.” Under this theory, it is difficult to envision any transfer of money or property, short of the payment of a bribe or blackmail, that would not occur by “operation of law.”
Second, it is difficult to ignore the dissent’s repeated references to the fact that the transaction at issue “was not a simple contract for the sale of assets,” post at 121, but rather constituted a “specialized transaction,” see post at 121. Although the dissent makes several references to the “special” nature of the transaction, it fails to explain how that nature communicates any legal significance. In fact, there is no obvious reason, and the dissent supplies none, for the proposition that the assertedly “special” nature of the instant transaction has any bearing on the determination of whether a transfer is or is not by “operation of law.” Certainly, that the transfer was “special” has nothing to do with the voluntariness of the transfer. The dissent’s emphasis in this regard only has the effect of obscuring the legal realities of this case that are relevant.
*120 Third, I believe it deserves emphasis that the dissent’s contention that the FDIC’s characterization of the transfer should be accorded “respectful consideration” and the authorities cited in support of this contention, post at 124 n 10, are inapposite. To begin with, this case is concerned with Michigan law, not federal law. The critical issue is whether Chase satisfied the Michigan “foreclosure by advertisement” statute, which implicates whether the transfer from the FDIC to Chase was accomplished by “operation of law,” as that phrase is understood under Michigan caselaw. Thus, clearly only issues of Michigan law are involved. Furthermore, even if the issues in this case did implicate federal law, the FDIC’s purported “guidance” is offered through an affidavit submitted by an individual “receiver in charge” for the FDIC. This affidavit is not the statement of the governing board of directors of the FDIC, it is not the statement of any single member of the governing board of directors of the FDIC, and it certainly is not the fruit of rulemaking or adjudication by the FDIC.[1] As the United States Supreme Court advised in United States v Mead Corp, 533 US 218, 229; 121 S Ct 2164; 150 L Ed 2d 292 (2001), “[a] very good indicator of delegation meriting [deference] is [an] express congressional authorization[] to engage in the rulemaking or adjudication process that produces the regulations or rulings for which deference is claimed.” There is an utter absence of any such “indicator” in this case.
Finally, I would offer additional guidance to the trial court concerning the nature of the “prejudice” that plaintiffs must demonstrate in order to set aside the *121 foreclosure. Although a nonexhaustive listing, some of the factors that might be relevant in this demonstration would include the following: whether plaintiffs were “misled into believing that no sale had been had,” Kuschinski v Equitable & Central Trust Co, 277 Mich 23, 26; 268 NW 797 (1936); whether plaintiffs “act[ed] promptly after [they became] aware of the facts” on which they based their complaint, id.; whether plaintiffs made an effort to redeem the property during the redemption period, Sweet Air Investment, Inc v Kenney, 275 Mich App 492, 503; 739 NW2d 656 (2007); whether plaintiffs were “represented by counsel throughout the foreclosure process,” Jackson Investment Corp v Pittsfield Prod, Inc, 162 Mich App 750, 756; 413 NW2d 99 (1987); and whether defendant “relied on the apparent validity of the sale by taking steps to protect its interest in the subject property,” id. at 757.

 For these reasons, I would also characterize differently than does the majority opinion the “FDIC’s affidavit,” ante at 112 n 25, and the “FDIC’s position,” ante at 111 n 22.