NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 14a0309n.06

No. 13-1812

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

Apr 23, 2014

DEBORAH S. HUNT, Clerk

| | |
|---|---|
| CHARLES L. SPADAFORE and MARY SPADAFORE, | ) ) ) |
| Plaintiffs-Appellants, | ) ) ) |
| v. | ) ) ) |
| AURORA LOAN SERVICES, LLC, | ) ) ) |
| Defendant-Appellee. | ) ) ) |

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE
EASTERN DISTRICT OF
MICHIGAN

BEFORE:     GUY, GIBBONS, and GRIFFIN, Circuit Judges.

**JULIA SMITH GIBBONS, Circuit Judge**.   Charles and Mary Spadafore lost their home to foreclosure.  They sued Aurora Loan Services, the foreclosing mortgagee, to set aside the foreclosure sale due to Aurora's alleged failure to comply with various Michigan statutes governing the foreclosure process.[1]   The district court dismissed the Spadafores' complaint. Because the Spadafores have not alleged any prejudice arising from a defect or irregularity in the foreclosure process, we affirm.

**I.**

This case relates to a home that the Spadafores owned in Clarkston, Michigan.   In September 2004 the Spadafores borrowed $875,000 from First National Bank of Arizona

---

[1] The Spadafores also pled a claim for breach of contract, but their appellate brief does not mention that claim, and therefore it is forfeited. *See United States v. Johnson*, 440 F.3d 832, 845–46 (6th Cir. 2006).

(FNBA), and the loan was secured by a mortgage on their home. The mortgage listed Mortgage Electronic Registration Services, Inc. (MERS) as the mortgagee, acting as nominee for FNBA and its successors and assigns. In June 2008 FNBA merged with First National Bank of Nevada (FNBNV). The union was short-lived. The next month the Office of the Comptroller of the Currency, an agency within the United States Department of the Treasury, declared FNBNV insolvent and shuttered the bank. The Federal Deposit Insurance Corporation (FDIC) assumed control of FNBNV and sold all of its assets to Mutual of Omaha Bank.

The Spadafores subsequently defaulted on the loan. In May 2010 they sent a letter to Aurora Loan Services, the mortgage servicer, requesting a loan modification. According to the letter, the Spadafores owned two businesses that were experiencing a severe decline in revenue. The Spadafores insisted that they wanted to keep their home, but they said the value of the house had plummeted to $331,000, while the outstanding balance on the loan remained $875,000. The Spadafores attached to their loan modification request a "financial package" from a third-party loan modification company demonstrating that the Spadafores had $8,000 cash to allocate to the loan if Aurora agreed to a modification.

Aurora confirmed to the Spadafores' counsel that it had received the modification request, but it initiated foreclosure proceedings nevertheless. MERS assigned the mortgage to Aurora on March 31, 2011, and the assignment was recorded on April 13, 2011. Around that same time, Aurora sent a mediation notice to the Spadafores, as required by statute. But the Spadafores never received the notice; they learned of the foreclosure several weeks later when Aurora posted a notice on their front door. In late April 2011 Aurora published notice of the foreclosure in a newspaper, in accordance with Michigan's foreclosure-by-advertisement statute.

The sheriff's sale of the Spadafores' house occurred on July 26, 2011, and Aurora won the auction. The Spadafores made another request for a loan modification, which Aurora denied. The Spadafores also presented a short-sale offer, but Aurora denied that as well. The redemption period was set to expire on January 26, 2012.

The Spadafores sued Aurora in Michigan state court on January 26—the last day of the redemption period. Their complaint sought to toll the redemption period until the court held a show-cause hearing to determine whether Aurora had standing to initiate the foreclosure proceedings. The state court issued a temporary restraining order that same day and scheduled a show-cause hearing for the following week. The day before the hearing, Aurora invoked the federal district court's diversity jurisdiction and removed the case to that court.

Aurora filed a motion for judgment on the pleadings or for summary judgment in September 2012. The district court granted the motion in December 2012 and dismissed the case. Because the Spadafores did not redeem their property during the six-month redemption period, the district court held that they lacked standing to challenge the foreclosure unless they could show fraud or irregularity in connection with the foreclosure process. Finding no fraud or irregularity, the district court held that the Spadafores could not "challenge the foreclosure sale or make any other claims with respect to the property, as their rights have been extinguished."

## II.

When a mortgagee exercises its right of foreclosure and triggers a sheriff's sale, Michigan law permits the mortgagor to file suit to set aside the sale based on defects or irregularities in the foreclosure process. *Kim v. JPMorgan Chase Bank, N.A.*, 825 N.W.2d 329, 337 (Mich. 2012). But the presence of defects or irregularities renders the foreclosure sale voidable rather than void *ab initio* and thus is not itself sufficient to set aside the sale. *Id.* "[T]o

set aside the foreclosure sale, plaintiffs must show that they were prejudiced by defendant's failure to comply with [Mich. Comp. Laws § 600.3204]. To demonstrate such prejudice, they must show that they would have been in a better position to preserve their interest in the property absent defendant's noncompliance with the statute." *Id.*

The Spadafores allege numerous defects and irregularities, but each allegation fails on its face, without needing to resort to the evidence submitted by both parties. They first allege that the foreclosure sale was invalid because they never received the notice required by Mich. Comp. Laws. § 600.3205a. But that statute requires the foreclosing party to send the notice; it says nothing about receipt of the notice. In their complaint the Spadafores do not deny that Aurora sent the notice, and accordingly they have not alleged a violation of the statute.

The Spadafores next allege that Aurora lacked standing to initiate the foreclosure proceedings because Aurora did not hold the promissory note that the Spadafores executed in favor of FNBA. The Spadafores cite various cases and treatises stating that an agent cannot enforce a promissory note unless the agent possesses the note. But Aurora is not enforcing the promissory note; it is enforcing the mortgage. There is no dispute that MERS assigned the mortgage to Aurora, and Michigan law is clear that the foreclosing party need not possess the note. *Residential Funding Co. v. Saurman*, 805 N.W.2d 183, 184 (Mich. 2011). The record holder of the mortgage is entitled to foreclose even if that entity does not possess the beneficial interest. *Id.* (citing *Arnold v. DMR Fin.*, 532 N.W.2d 852 (Mich. 1995); *Feldman v. Equitable Trust Co.*, 270 N.W. 809 (Mich. 1937); *Adams v. Niemann*, 8 N.W. 719 (Mich. 1881)). It is therefore immaterial whether Aurora held the promissory note.

The Spadafores also contend that the foreclosure proceedings were invalid because the mortgage was not assigned to Aurora until after Aurora sent the mediation notice. This, too, is

not a violation of Michigan law. Although Michigan law requires the foreclosing party to record all assignments of the mortgage before commencing the foreclosure, *see Kim*, 825 N.W.2d at 337 (citing *Feldman*, 270 N.W. 809), the mediation notice is not considered part of the foreclosure. Mich. Comp. Laws § 600.3205a(1) specifically states that the mediation notice must be sent *before* the foreclosure proceedings are commenced, and section 600.3204 uses the same language. *See* Mich. Comp. Laws § 600.3204(4) ("A party shall not commence proceedings under this chapter to foreclose a mortgage . . . if . . . [n]otice has not been mailed to the mortgagor as required by section 3205a."). The statute thus makes clear that the mediation notice is not part of the foreclosure proceedings; it is a condition precedent to those proceedings. Michigan law therefore does not require the foreclosing party to register assignments of the mortgage before sending the mediation notice.

In their penultimate claim, the Spadafores allege that "the MERS mortgage was transferred as part of the FDIC takeover of [FNBNV] and no assignment was in record prior to the Sheriff Sale." This allegation confuses the promissory note with the mortgage. The Spadafores allege that the FDIC assumed control of FNBNV and sold its assets, including the promissory note connected to their home loan, to Mutual of Omaha Bank. But their complaint does not allege that the FDIC ever became mortgagee; it alleges that MERS was the mortgagee and that "[l]egal ownership of the Note and Mortgage were split at the Closing" of the September 2004 home loan. The complaint thus alleges that MERS remained the mortgagee until the assignment to Aurora. The FDIC never became mortgagee, and accordingly neither MERS nor any other entity was required to record an assignment of the mortgage to the FDIC.

Finally, the Spadafores allege that Aurora violated Mich. Comp. Laws § 600.3220 because Aurora adjourned the foreclosure sale for more than one week without republishing

notice of the sale.  Yet the Spadafores have not alleged any prejudice as a result of Aurora's alleged failure to republish.  The Spadafores had timely notice of both the foreclosure proceedings and the sheriff's sale, yet they made no effort to block the sale or to redeem the property.  They do not explain what they would have done differently if Aurora had republished notice of the sale after the alleged adjournment.  Aurora's alleged failure to republish notice of the sale after adjourning the sale for more than one week thus did not prejudice the Spadafores, and the foreclosure sale cannot be set aside.

## III.

The district court's judgment is affirmed.