*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

SUTARIYA PROPERTIES LLC,

        Plaintiff/Counter-Defendant-
        Appellant,

v

ALLEN & I-75, LLC. and BILAL SAAD,

        Defendants/Counter-Plaintiffs/Third
        Party Plaintiffs/Cross-Plaintiffs-
        Appellees

and

ALLEN & I-75, INC.,

        Defendant/Counter-Plaintiff/Third-
        Party Plaintiff

and

FRACN HOLDINGS LLC, and CHARLES
ALIAHMAD,

        Defendants/Cross-Defendants

and

NORTH CRE VENTURE 2010-2, LLC,

        Third-Party Defendant.

FOR PUBLICATION
February 25, 2020
9:10 a.m.

No. 344481
Wayne Circuit Court
LC No. 14-009289-CH

Before: SHAPIRO, P.J., and JANSEN and M. J. KELLY, JJ.

PER CURIAM.

      Appellant, Sutariya Properties, LLC, appeals as of right a judgment in its favor against FRACN Holdings, LLC. On appeal, Sutariya Properties challenges the trial court's prior order

granting summary disposition in favor of appellees, Allen & I-75, LLC and Bilal Saad.  Because there are no errors warranting reversal, we affirm.

## I.  BASIC FACTS

The events leading to the underlying dispute in this matter are largely undisputed.  On April 28, 2009, Allen & I-75 entered an agreement with Warren Bank, borrowing $1,650,000 so that it could purchase real property in Southgate, Michigan.  Paragraph 8.11 of the loan agreement, which is referred to by the parties as the tender-back provision or the put-back provision, provides:

> During the period from May 1, 2011 through November 1, 2011 and provided that no Event of Default exists, Borrower may, with not less than 30 days' nor more than 60 days' prior written notice to Bank, deed the Real Property and convey or cause to be conveyed the Personal Property to Bank by warranty deed conveying marketable fee simple title and warranty bill of sale, free and clear of any interests, encumbrances and liens of any third parties, and without any new restrictions against the Real Property that do not exist of record as of the date of this Loan Agreement, with all real and personal property taxes and assessments due and payable as of the date of such conveyance fully paid, in full satisfaction of Borrower's and Guarantors' liability for the remaining unpaid non-delinquent principal and interest then due on the Loan.  If Borrower elects to exercise such right to convey the Real Property and Personal Property as provided herein, there shall be an orderly transfer at a mutually agreeable date and time within the notice period with real and personal property taxes pro-rated on a DUE DATE BASIS and with final utility readings and surrender of all keys to the Real and Personal Property, and any improvements to the Real Property and Personal Property by or on behalf of Borrower or any Guarantor shall remain with the Real Property and Personal Property and will be considered the property of Bank without liability to Borrower or any Guarantor.

Along with the loan agreement, Allen & I-75 executed a promissory note, a mortgage on the property in favor of Warren Bank, and an assignment of leases and rents in favor of Warren Bank.  In addition, Allen & I-75's sole member, Saad, executed a guaranty for the debt. Collectively, the loan agreement, promissory note, mortgage, assignment of leases and rents, and guaranty will be referred to as the Allen Loan Package.

In 2009, Warren Bank was closed by the Michigan Office of Financial and Insurance Regulation, and the Federal Deposit Insurance Corporation (FDIC) was appointed as the receiver for its holdings.  Thereafter, the FDIC partnered with Colony Capital, a real estate private equity firm, to create North CRE Venture 2010-2, Inc.  As it relates to this case, North CRE held a portfolio of debts including the Allen Loan Package.  Colony Capital acted as North CRE's managing member to resolve nonperforming debts, and the FDIC maintained a 60% controlling interest in North CRE.

Starting on May 27, 2011, Allen & I-75 and Saad sought to exercise the option under Paragraph 8.11 of the loan agreement to convey the property to the lender in full satisfaction of the liability associated with the loan, as well as the liability of the guarantors.  Between May 27,

2011 and July 2011, Allen & I-75 and Saad sent numerous letters invoking Paragraph 8.11 to North CRE or those affiliated with North CRE. In early September 2011, North CRE's lawyer finally contacted Allen & I-75 and Saad. Initially, North CRE indicated that there was some question as to whether Allen & I-75's payment obligations were current. Yet, it was eventually determined that the payment obligations were current and that Allen & I-75 was not in default. Further, North CRE acknowledged that Allen & I-75 had the right to exercise the tender-back option in Paragraph 8.11 of the loan agreement. However, because of the terms of the agreement between Colony Capital and the FDIC, North CRE claimed that it was unable to accept title to the property. Therefore, in an effort to resolve the issue, North CRE informally agreed to extend the six-month period within which Paragraph 8.11 of the loan agreement required Allen & I-75 to convey the property to North CRE. It was also agreed that Allen & I-75 would remain on the property, without making further loan payments, to operate the gas station business and would still be able to exercise its tender-back rights under Paragraph 8.11 when a final resolution was reached.[1]

The Allen Loan Package was ultimately sold to FRACN in the spring of 2014 as part of a debt portfolio consisting of negotiable instruments related to several properties. The record reflects that although North CRE did not provide a written disclosure regarding the modification of the loan agreement, FRACN received an e-mail indicating that "[t]he note for [the property at issue in this case] has been modified/rewritten to forgive the debtor (Bill [sic] Saad) for any responsibility in paying back the $1,649,416 outstanding balance on the note as long as the debtor makes a demonstrative effort to sell the asset." Almost immediately after North CRE assigned the Allen Loan Package to FRACN, FRACN assigned it to Sutariya Properties, without providing any notice of the issues regarding its enforceability.

On July 18, 2014, Sutariya Properties initiated this action by filing a complaint against Allen & 1-75 and Saad alleging that the 2009 promissory note was in default and seeking to foreclose on the mortgage, have a receiver appointed, and recover the balance of the promissory note. Allen & 1-75 and Saad denied that the note was in default, indicating that they had complied with the tender-back provision in Paragraph 8.11 of the loan agreement. Allen & I-75 and Saad additionally filed a counter-claim against Sutariya Properties, alleging that by refusing to honor the tender-back provision in Paragraph 8.11 of the loan agreement, Sutariya had breached the agreement.

The parties filed numerous competing motions for summary disposition. Relevant to this appeal, Sutariya Properties argued that any modification of the loan agreement was oral, but that an oral modification was ineffective because MCL 566.132(2), which is applicable in actions against a financial institution, requires a "promise or commitment to renew, extend, modify, or permit a delay in repayment or performance of a loan, extension of credit, or other financial accommodation" to be "in writing and signed with an authorized signature by the financial institution." Following oral arguments, the trial court determined that MCL 566.132 did not apply because there was no attempt to enforce an oral agreement against a "financial institution," and the statutory language did not indicate that it applied to "an individual who takes an assignment of

_____

[1] The parties dispute whether the loan modification was strictly an oral modification or whether it was committed to a signed writing sufficient to satisfy the statute of frauds.

-3-

a note, in the course of business, further down the road." The court also determined that Paragraph 8.11 of the loan agreement had been modified so as to release Allen & I-75 and Saad from liability on the outstanding indebtedness and that the negotiated release was conveyed to FRACN's broker. The trial court, therefore, concluded that Allen & I-75 and Saad were entitled to summary disposition, and entered an order granting their motion and denying Sutariya Properties' motion for summary disposition. The order also dismissed Allen & I-75 and Saad's counterclaims as moot. After further litigation unrelated to the issues raised in this appeal, the trial court entered a final judgment in Sutariya Properties' favor against FRACN from which this appeal was taken.

## II. SUMMARY DISPOSITION

### A. STANDARD OF REVIEW

Sutariya Properties argues that the trial court erred by denying its motion for summary disposition and by granting Allen & I-75 and Saad's motion for summary disposition. Challenges to a court's decision to grant or deny motions for summary disposition are reviewed de novo. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). Summary disposition is appropriate under MCR 2.116(C)(10) if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Mich Ass'n of Home Builders v City of Troy*, 504 Mich 204, 212; 934 NW2d 713 (2019). "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ." *El-Khalil*, 504 Mich at 160 (quotation marks and citation omitted). Issues of statutory interpretation are reviewed de novo. *Mich Ass'n of Home Builders*, 504 Mich at 212.

### B. ANALYSIS

Sutariya Properties argues that Allen & I-75 and Saad cannot enforce the modification of Paragraph 8.11 of the loan agreement because the modification is oral and, therefore, its enforcement is barred by the statute of frauds set forth in MCL 566.132(2). "The statute of frauds, MCL 566.132, requires certain types of agreements to be in writing before they can be enforced." *Crown Technology Park v D&N Bank, FSB*, 242 Mich App 538, 548; 619 NW2d 66 (2000). When interpreting a statute, this Court must first examine the statutory language, and, "[i]f the statute is unambiguous on its face, we simply enforce the statute as written." *Id*. at 549. MCL 566.132(2) provides:

> (2) An action shall not be brought against a financial institution to enforce any of the following promises or commitments of the financial institution unless the promise or commitment is in writing and signed with an authorized signature by the financial institution:

> (a) A promise or commitment to lend money, grant or extend credit, or make any other financial accommodation.

> (b) A promise or commitment to renew, extend, modify, or permit a delay in repayment or performance of a loan, extension of credit, or other financial accommodation.

> (c) A promise or commitment to waive a provision of a loan, extension of credit, or other financial accommodation.

This Court has held that MCL 566.132(2) acts as "an unqualified and broad ban" on claims *against financial institutions*. *Crown Tech Park*, 242 Mich App at 550. The term "financial institution" is statutorily defined as

> a state or national chartered bank, a state or federal chartered savings bank or savings and loan association, a state or federal chartered credit union, a person licensed or registered under the mortgage brokers, lenders, and servicers licensing act, Act No. 173 of the Public Acts of 1987, being sections 445.1651 to 445.1683 of the Michigan Compiled Laws, or [the Secondary Mortgage Loan Act,] Act No. 125 of the Public Acts of 1981, being sections 493.51 to 493.81 of the Michigan Compiled Laws, or an affiliate or subsidiary thereof. [MCL 566.132(3).]

The question at issue in this case is whether North CRE, the entity that modified the loan agreement with Allen & I-75 and Saad qualifies as a financial institution. At the outset, it is clear that North CRE is not a bank, a savings bank or savings and loan association, a credit union, or a person licensed or registered under the Mortgage Brokers, Lenders, and Servicers Licensing Act or Secondary Mortgage Loan Act, MCL 445.1651 *et seq.* or the Secondary Mortgage Loan Act, MCL 493.51 *et seq.* On appeal, Sutariya Properties argues that North CRE is an "affiliate or subsidiary" of "a state or nationally chartered bank."

Specifically, Sutariya Properties proclaims that the FDIC is a state or nationally chartered bank because it was appointed as the receiver for Warren Bank. The FDIC, however, is a corporation created pursuant to the federal deposit insurance act, 12 USC 1811 *et seq.*, to insure deposits held by various institutions and act as receiver for insured institutions under certain circumstances. 12 USC 1811; 12 USC 1822; see also *Kim v JPMorgan Chase Bank, NA*, 493 Mich 98, 107 n 15; 825 NW2d 329 (2012). The fact that the FDIC was appointed as the receiver for Warren Bank (which was presumably a state or nationally chartered bank) does not mean that the FDIC is also a state or nationally chartered bank. The Legislature opted to include affiliates and subsidiaries of state or nationally chartered banks within the definition of a financial institution.[2] It did not, however, also include receivers of state or nationally chartered banks within the definition. When interpreting a statute, this Court is not at liberty to read provisions not included by the Legislature into the statutory language. *Polkton Twp v Pellegrom*, 265 Mich App

---

[2] MCL 566.132(3) provides that affiliates or subsidiaries of state or nationally chartered banks qualify as financial institutions. Because these terms were not defined by the Legislature and have a peculiar legal meaning, it is appropriate to consult a legal dictionary to ascertain their meaning. *Safdar v Aziz*, 327 Mich App 252, 262; 933 NW2d 708 (2019). According to *Black's Law Dictionary* (11th ed), "affiliate" means "[a] corporation that is related to another corporation by shareholdings or other means of control; a subsidiary, parent, or sibling corporation." A "subsidiary" is a shortened term for "subsidiary corporation," which refers to "[a] corporation in which a parent corporation has a controlling share." *Black's Law Dictionary* (11th ed), p 432. The FDIC is not a subsidiary or an affiliate of Warren Bank.

88, 102; 693 NW2d 170 (2005). Accordingly, under the plain language of MCL 566.132(3), the FDIC is not a financial institution, so North CRE cannot qualify as a financial institution by virtue of being an affiliate or subsidiary of the FDIC. The trial court did not err by granting summary disposition.[3]

Affirmed. Allen & I-75 and Saad may tax costs as the prevailing party. MCR 7.219(A).

/s/ Douglas B. Shapiro
/s/ Kathleen Jansen
/s/ Michael J. Kelly

---

[3] Given our resolution, we decline to address Allen & I-75 and Saad's alternative arguments in favor of affirming the trial court's decision to grant their motion for summary disposition and deny Sutariya Properties' motion for summary disposition.