**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 14a0709n.06

**Case No. 13-2522**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Sep 09, 2014
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| LYNN MARIE CONNOLLY, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| DEUTSCHE BANK NATIONAL TRUST | ) | DISTRICT OF MICHIGAN |
| COMPANY, as Trustee for Certificate Holders | ) | |
| for Quest Trust 2006-X2, Asset Backed | ) | |
| Certificates, Series – X2, | ) | |
| | ) | O P I N I O N |
| Defendant-Appellee. | ) | |

**BEFORE: GIBBONS and McKEAGUE, Circuit Judges; STAFFORD, District Judge.**[*]

**McKEAGUE, Circuit Judge.** Lynn Connolly ("Connolly") appeals the district court's denial of a variety of claims arising from statutory foreclosure-by-advertisement proceedings conducted by the Defendant, Deutsche Bank National Trust Company (Deutsche). For the reasons set forth below, we **AFFIRM**.

**I**

This foreclosure concerns Connolly's ten acre parcel of property. (R. 1, Complaint at 9, PageID # 9.) On October 24, 2002, Connolly signed a promissory note and obtained a loan for $333,000.00 from Ameriquest Mortgage Company to re-finance the property. (*Id.* at 10, PageID

---

[*] The Honorable William H. Stafford, Jr., Senior United States District Judge for the Northern District of Florida, sitting by designation.

# 10.) As security for the loan, Connolly granted Ameriquest a mortgage on the property. The Mortgage was recorded with the Livingston County Register of Deeds. (R. 20, Exhibit H Mortgage at 2, PageID # 325.) Connolly has not made a payment on the loan since December 2008. (R. 30, Ex. C Pl's Deposition at 10, PageID # 294).

Citi Residential Lending Inc., as Attorney-in-Fact for Ameriquest Mortgage Company, assigned the mortgage to Deutsche Bank National Trust Company, as trustee for Ameriquest Mortgage Securities Inc.[1] This would constitute the first assignment of the mortgage. A few years later on April 28, 2009, Connolly filed for Chapter 7 Bankruptcy. (R. 20, Exhibit C Pl's Deposition at 5, PageID # 289.)

On May 8, 2009, the mortgage was then assigned a second time,[2] to a different trust for which Deutsche was a trustee. The second assignment was recorded May 13, 2009. (R. 20, Exhibit J Assignment of Mortgage at 1–4, PageID # 346–349.)

Subsequently, Deutsche foreclosed on Connolly's property, and a sheriff's sale was held on May 5, 2010. Deutsche was the highest bidder with a bid of $108,750. (R. 20, Exhibit A Sheriff's Deed at 2, PageID # 271.) Connolly was then allowed a statutory twelve-month redemption period to purchase the property for the auctioned price. However, seven months into the redemption period on December 1, 2010, Deutsche, through its attorney, executed an

---

[1] Specifically, the assignment was from Citi Residential Lending Inc., as Attorney-in-Fact for Ameriquest Mortgage Company, to Deutsche Bank National Trust Company, as trustee for Ameriquest Mortgage Securities Inc., Quest Trust 2005-X2 Asset Backed Certificates, Series 2006-X2, Under the Pooling and Servicing Agreement Dated August 1, 2006. (R. 20, Ex. I. Assignment of Mortgage.)

[2] Specifically, the assignment of mortgage was from Deutsche Bank National Trust Company, as Trustee for Ameriquest Mortgage Securities, In., Quest Trust 2005-X2 Asset Backed Certificates, Series 2006-X2, Under the Pooling and Servicing Agreement Dated August 1, 2006 to Deutsche Bank National Trust Company, as Trustee in trust for the benefit of the Certificateholders for Quest Trust 2006-X2, Asset Backed Certificates, Series X-2. (R. 20, Exhibit J Assignment of Mortgage at 1–4, PageID # 346–349.)

Affidavit Expunging the Sherriff's Deed pursuant to M.C.L.A. 565.451a. (R. 20, Exhibit D Affidavit Expunging Sherriff's Deed at 1–4, PageID # 310–13.) The affidavit states that the sheriff's deed must be expunged because the sheriff's sale was "inadvertently held." (*Id.* at 3, PageID # 312.) The affidavit was recorded on December 8, 2010 with the Livingston County Register of Deeds. (*Id.*)

On January 12, 2011, a third assignment[3] was recorded, to another trust for which Deutsche was trustee. (R. 20, Exhibit L Third Assignment at 3, PageID # 356.) After the third assignment, Deutsche foreclosed the mortgage by advertisement. A sheriff's sale occurred on May 18, 2011, and Deutsche had the highest bid with $172,000. (R. 20, Exhibit B 2011 Sheriff's Deed at 2, PageID # 279.) A Sheriff's Deed to Deutsche was recorded on May 26, 2011. *Id.* Connolly then had one year to redeem the property for the new price. Before the year expired, Connolly filed her complaint on April 24, 2012. She, however, never attempted to redeem her property by May 18, 2012. Upon the filing of her complaint in state court, Deutsche removed to the United States District Court for the Eastern District of Michigan on the basis of diversity of citizenship. (R. 1, Notice of Removal at 2–4, PageID # 2–4.)

Connolly asserted seven claims arising from statutory foreclosure-by-advertisement proceedings conducted by Deutsche as trustee.[4] The district court granted Deutsche's motion for

---

[3] Specifically, the Mortgage was assigned from Deutsche Bank National Trust Company, as Trustee for Ameriquest Mortgage Securities, Inc., Quest Trust 2005-X2 asset backed Certificates Series 2006-X2, Under the Pooling and Servicing Agreement dated August 1, 2006 to Defendant Deutsche Bank National Trust Company, as Trustee in trust for the benefit of the Certificate holders for Quest Trust 2006-X2, Asset Backed Certificates, Series 2006-X2.

[4] In the complaint, Connolly alleges the following claims: Jurisdictional Allegations (Count I), Declaratory Judgment/Wrongful Foreclosure (Count II), Complaint to Quiet Title (Count III), Complaint for Money Damages for the Tort of Slander of Title by Document Recordings (Count IV), Slander to Plaintiff Individually by False Publications (Count V), Specific Count as to M.C.L. 600.3205(a) Violation (Count VI), and Defendant's Violation of M.C.L. 440.9109(1)(c) Failure to Cancel and Deliver the Original Promissory Note (Count VII). (R. 1, Complaint at 9–

summary judgment[5] on all claims. (R. 31, Memorandum and Order at 1, 20, Page ID # 470, 489.) The district court, in turn, denied Connolly's motion for partial summary judgment. *Id.* Connolly subsequently filed a motion for reconsideration, which the district court denied. [6]

## II

Summary judgment may be warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To meet such a burden on a motion for summary judgment, the moving party may "point[] out to the district court that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "All justifiable inferences [must be drawn] in the light most favorable to the non-moving party." *Hager v. Pike Cnty. Bd. of Ed.*, 286 F.3d 366, 370 (6th Cir. 2002) (Jones, Moore, Haynes). In a case based on diversity of citizenship, such as this, we apply the substantive law of the state of Michigan and "follow the decisions of the state's highest court when that court has addressed the relevant issue." *Savedoff v. Access Group, Inc.*, 524 F.3d 754, 762 (6th Cir. 2008) (Keith, Clay, Gilman (concurring)). If a state's highest court has not addressed the issue, then "[i]ntermediate state appellate courts' decisions are also viewed as persuasive unless it is shown that the state's highest court would

---

30, PageID # 9–30.) Of these complaints, the Plaintiff only raises Count II and Count IV on appeal, and accordingly, we only address those claims.

[5] In the district court's Memorandum and Order, the court noted that the Deutsche titled its motion as a motion for summary judgment, yet the motion cited and argued that the complaint was subject to dismissal under Fed. R. Civ. P. 12(b)(6) and Fed. R. Civ. P. 56. (R. 31 Memorandum and Order at 1, PageID # 470 n.3.) However, because the district court considered evidence outside the four-corners of the complaint in ruling on the motion, we will treat the district court's ruling as a ruling granting summary judgment.

[6] The standard of review on motions for reconsideration requires the finding of an abuse of discretion. *Charbeneau v. Wayne Cnty. General Hosp.*, 158 Mich. App. 730, 733 (Mich. Ct. App. 1987). As we determine that the redemption period was 12-months and has expired, Connolly has not proven that the lower court's use of a six-month redemption period was an abuse of discretion. Therefore, we do not address the substance of Connolly's motion for reconsideration and affirm the district court's denial.

decide the issue differently. *Conlin v. Mortg. Elec. Registration Sys.*, 714 F.3d 355, 358 (6th Cir. 2013) (citing *Savedoff*, 524 F.3d at 762).

On appeal, Connolly argues that the dismissal of her claims constitutes reversible error. (Pl's Brief at 5.) First, she claims that her mandatory redemption period has not expired. *Id.* at 3–4. On that premise, she argues wrongful foreclosure on three grounds: 1) Deutsche interfered with her statutory vested redemption rights by the use of a unilateral recording of a false Affidavit Expunging Sheriff's Deed; 2) Deutsche did not have standing to foreclose on her home, namely because it did not carry its burden of proof that it is the true party entitled to enforce the debt; and 3) Deutsche obtained the power to foreclose through an incomplete and fraudulent recorded chain of mortgage assignments. *Id.* Next, Connolly claims the expungement affidavit constitutes a compensable slander of title. *Id.* at 3, 7.

A preliminary question is whether Connolly's redemption period has expired. It is not disputed that Connolly failed to redeem within the twelve-month redemption period. However, Connolly argues that her complaint was filed timely, nearly a month before the expiration of her redemption period from the second sheriff's auction, which she claims tolled the redemption period. However, "the filling of a lawsuit is insufficient to toll the redemption period." *Conlin*, 714 F.3d at 360 (citing *Overton v. Mortg. Elec. Registration Sys.*, No. 284950, 2009 WL 1507342, at *1 (Mich. Ct. App. May 28, 2009)). As such, "once the redemption period expires, the homeowner has no legal interest in the property that litigation might vindicate." *El-Sablani v. IndyMac Mortg. Servs.*, 510 Fed. App'x 425, 428 (6th Cir. 2013) (Daughtrey, Cole, Gibbons). Accordingly, Connolly's redemption period has expired.

Courts have the ability to "allow an equitable extension of the period to redeem from a statutory foreclosure sale . . . in order to keep a plaintiff's suit viable, provided [s]he makes a

clear showing of fraud, or irregularity by the defendant." *Id.* (citing *Schulthies v. Barron*, 167 N.W.2d 784, 785 (Mich. Ct. App. 1969)). Such fraud or mistake "must relate to the foreclosure procedure itself." *Id.* at 429. The first issue, then, is whether the redemption period should be extended because of fraud or irregularity by the defendant. Even if the plaintiff can prove fraud or irregularity in connection to her claims, she will also have to surpass a more difficult hurdle of showing actual prejudice. *See Conlin*, 714 F.3d at 359–62; *see also Kim v. JPMorgan Chase Bank, N.A.*, 493 Mich. 98, 115–16 (Mich. 2012). Prejudice is proven if the defendant "would have been in a better position to preserve [her] interest in the property absent defendant's non-compliance with the statute." *Kim*, 493 Mich. at 116. The concurring opinion in *Kim* provides factors to be considered when determining prejudice:

> [W]hether plaintiffs were misled into believing that no sale had been had; whether plaintiffs act[ed] promptly after [they became] aware of the facts on which they based their complaint; whether plaintiffs made an effort to redeem the property during the redemption period; whether plaintiffs were represented by counsel throughout the foreclosure process; and whether defendant relied on the apparent validity of the sale by taking steps to protect its interest in the subject property."

*Id.* at 120–21(Markman, J. concurring) (citations omitted). We hold that Connolly cannot establish the fraud and prejudice required to extend the redemption period, as none of her claims are viable, as discussed below.

### A. Wrongful Foreclosure

*1. The Validity of an Affidavit Expunging a Sheriff's Sale*

Connolly's principal argument on appeal is that the foreclosure was defective due to the filing of the expungement affidavit. Her contention lacks merit.

Numerous foreclosure cases in Michigan have accepted the use of an affidavit expunging a sheriff's sale, yet very few have actually considered the validity of such a practice under the authority of M.C.L. § 565.451a.[7]

In many of the cases concerning expungement affidavits, the courts accepted the practice because the affidavit was not challenged.[8] In others, the affidavit's execution had the exact effect the plaintiff had sought as relief.[9] One Michigan case, which is most factually on point, does not address the validity of the expungement affidavit even though it severed the prior redemption period.[10] The only relevant case that addresses the validity of an expungement affidavit is *Cordes v. Great Lakes Excavating & Equipment Rental, Inc.*, No. 304003, 2012 WL 2052789 (Mich.

---

[7] M.C.L. § 565.451a provides in part as follows:

> Sec. 1a. An affidavit stating facts relating to any of the following matters which may affect the title to real property in this state made by any person having knowledge of the facts or by any person competent to testify concerning such facts in open court, may be recorded in the office of the register of deeds of the county where the real property is situated:
>
> (a) Birth, age, sex, marital status, death, name, residence, identity, capacity, relationship, family history, heirship, homestead status and service in the armed forces of parties named in deeds, wills, mortgages and other instruments affecting real property;
>
> (b) Knowledge of the happening of any condition or event which may terminate an estate or interest in real property.

Mich. Comp. Laws Ann. § 565.451a(a)–(b) (West).

[8] *See Buttazzoni v. Nationstar*, No. 13-CV-14901, 2014 WL 1031278, at *3 (E.D. Mich. March 14, 2014) ("Plaintiff has not included even one allegation concerning how the expungement affected the second foreclosure process."); *see also Maltbie v. Bank of Am.*, 1:12-CV-1002, 2013 WL 6078945 (W.D. Mich. Nov. 19, 2013); *Roche v. CitiMortgage, Inc.*, 12-CV-10266, 2012 WL 4498520 (E.D. Mich. Sept. 28, 2012); *PNC Mortg. v. Lambert*, 302178, 2012 WL 1367575 (Mich. Ct. App. Apr. 19, 2012).

[9] *See Freund v. Trott & Trott, P.C.*, No. 299011, 2011 WL 5064248 (Mich. App. Oct. 25, 2011).

[10] *See Colbert v. Fed. Nat. Mortgage Ass'n*, 12-13844, 2013 WL 1629305 WL 1629305, at *2 (E.D. Mich. Apr. 16, 2013) (validity of the expungement affidavit was not challenged, and the case was dismissed based on a lack of jurisdiction).

App., June 7, 2012). In *Cordes*, the court of appeals addressed competing interests in real property, where one party recorded an affidavit stating that the plaintiff's mortgage should not have been discharged and that the mortgage remained in effect. The court ruled that "the [owner's] affidavit rehabilitated the constructive notice of that mortgage in the land record title system." *Id.* The Michigan Court of Appeals held that the expungement affidavit, pursuant to M.C.L. 565.451a(b), can have effect because such an affidavit is based on "[k]nowledge of the happening of any condition or event which may terminate an estate or interest in real property." *Id.* at *2 (citing M.C.L. 565.451a(b)). The court further held that the affidavit was "sufficient to put interested persons on notice that the parcel was encumbered by a mortgage and that [the] discharge of the mortgage was erroneous." *Id.* at *2.

The Michigan Supreme Court has yet to address the validity of an expungement affidavit. Therefore, we may look to the decisions of the appellate court. As the Michigan Court of Appeals has decided the validity of an expungement affidavit in the case of a mortgage discharge, we similarly hold that such an affidavit can effectively void a sheriff's sale. *See Cordes*, 2012 WL 2052789, at *2. The expungement affidavit used in the instant case was sufficient to put interested persons on notice that the parcel was encumbered by a mortgage and that the sheriff's sale was inadvertently held.

Connolly relies heavily on *PHH Mortg. Corp. v. O'Neal*, No. 311233, 2013 WL 3025566 (Mich. Ct. App. June 18, 2013), where she claims the court ruled that a homeowner's statutory redemption rights cannot be unilaterally cut off by an expungement affidavit. (Def's Brief at 28–29). Connolly's interpretation of *O'Neal* is erroneous. In *O'Neal*, the property in dispute, worth approximately $80,000, was sold to the plaintiff at auction for $1000. *Id.* at *1. The defendant obtained a quit claim deed from the original mortgagor and attempted to redeem the property

within the statutory period. *Id.* However, the plaintiff filed an expungement affidavit the same day as the conveyance of the deed and refused to accept the $1000 redemption amount. *Id.* In a two-count complaint, the plaintiff sought to quiet title to the property and to set aside the sheriff's deed on the mortgage foreclosure. The Michigan Court of Appeals affirmed the trial court's award of summary judgment for the defendant. While this case is revealing, the court in *O'Neal* did not rule on the validity of the expungement affidavit. The court never discussed M.C.L. § 565.451a, or the effect of a rescission of a foreclosure sale by affidavit. In fact, the court simply ruled that the defendant had a right to redeem the property because the plaintiff's claims of clerical and scrivener's error were not persuasive. *Id.* at *6. In this case, Connolly did not try to redeem the property at the same time the expungement affidavit was executed. Instead, she filed the instant complaint without making a single attempt at redeeming the property before its expiration. Therefore, *O'Neal* is inapposite as to the validity of the expungement affidavit.

Because prior Michigan law has consistently accepted an affidavit expunging a sheriff's sale, as well as in other contexts such as mortgage discharges, this Court will similarly uphold the affidavit's validity. The affidavit, therefore, does not prove fraud or irregularity in the foreclosure process and the redemption period cannot be extended. Connolly cannot prove prejudice from such an affidavit, as none of her claims are viable.

### 2. *Deutsche's Standing to Collect on the Mortgage*

Connolly also claims that Deutsche has not presented any evidence that it has standing to collect on or enforce the Ameriquest Note. Connolly asserts that the subsequent assignments were conducted through forged robo-signing,[11] which makes the foreclosure voidable.

---

[11] We have addressed the issue of robo-signatures recently and have not found that such practices have prejudiced mortgagors. *See Conlin*, 714 F.3d at 362 ("[I]t is apparent that neither of

Connolly does not present any viable case law to support her position that Deutsche lacks standing to foreclose. According to M.C.L. § 600.3204(d), a "party may foreclose a mortgage by advertisement if . . . [t]he party foreclosing the mortgage is either the owner of the indebtedness or of an interest in the indebtedness secured by the mortgage or the servicing agent of the mortgage." The district court properly determined that the third recorded assignment and sheriff's deed demonstrate that defendant is the mortgagee of record. According to *Residential Funding Co., LLC v. Saurman*, 490 Mich. 909, 910 (Mich. 2011), "interest in the indebtedness" includes "mortgagees of record among the parties entitled to foreclose by advertisement." Deutsche Bank is a mortgagee of record and has the power to foreclose the mortgage.

*3. Standing to Challenge the Mortgage Assignments*

Deutsche Bank argues that Connolly does not have standing to challenge the validity of the mortgage assignments. It is well established that "a litigant who is not a party to an assignment lacks standing to challenge that assignment." *Livonia Properties Holdings, LLC v. 12840-12976 Farmington Road Holdings, LLC*, 399 F. App'x 98, 102 (6th Cir. 2010) (Merritt, Rogers, Sutton). The court in *Livonia* established an exception to this rule, stating "[a]n obligor may assert as a defense any matter which renders the assignment absolutely invalid or ineffective, or void." *Id.* (internal quotation marks omitted). Such defenses included "nonassignability of the instrument, assignee's lack of title, and a prior revocation of the assignment," all of which give the obligor standing because there was a possibility of "having to pay the same debt twice." *Id.*

Connolly alleges that the robo-signatures are forged and should not be given effect because such fraud will render the chain of title voidable. The Court in *Conlin* ruled on this exact

Plaintiff's theories—the 'robo-signed' assignment or MERS's incapacity to assign—can support this action.").

question, following the framework from *Livonia*. The plaintiff in *Conlin* claimed the chain of title of the defendant's assigned mortgages was conducted through fraud or irregularity because the assignments were "forged or 'robo-signed.' " *Conlin*, 714 F.3d at 360. This Court held that the plaintiff had no standing to challenge the assignments. *Id.* at 362. According to the Court, the plaintiff was a third party to the assignments and could only prove that any defect was merely voidable. *Id.* at 361–61. Connolly has not asserted any of the defenses from *Livonia*, nor is it clear that any of the defenses apply. Therefore, Connolly does not have standing to challenge the mortgage assignments.

Even if Connolly could prove an irregularity in the assignments, the court in *Conlin* further explained that defects from a voidable foreclosure require the showing of prejudice.[12] *Id.* at 361. Such a showing of prejudice cannot be made. There is no evidence that Connolly was misled into believing there was no sale. Rather, Connolly waited eleven months into the second redemption period to file this suit, Connolly did not attempt to redeem the property within the redemption period, and Connolly has been represented by counsel throughout the foreclosure process. Furthermore, there is no showing that Connolly would have been liable to anyone but

---

[12] As stated above, prejudice is proven if the defendant "would have been in a better position to preserve [her] interest in the property absent defendant's non-compliance with the statute." *Kim*, 493 Mich. at 116. The concurring opinion in *Kim* provides factors to be considered when determining prejudice:

> [W]hether plaintiffs were misled into believing that no sale had been had; whether plaintiffs act[ed] promptly after [they became] aware of the facts on which they based their complaint; whether plaintiffs made an effort to redeem the property during the redemption period; whether plaintiffs were represented by counsel throughout the foreclosure process; and whether defendant relied on the apparent validity of the sale by taking steps to protect its interest in the subject property."

*Id.* at 120–21(Markman, J. concurring) (citations omitted).

Deutsche or would be in a better position to keep the property absent the defect. For these reasons, Connolly cannot prove that she has standing to challenge the assignments or that she was prejudiced by Deutsche's assignments or foreclosure.[13] In sum, the record does not contain any evidence supporting Connolly's challenges to the foreclosure and the district court's ruling is affirmed.

**B. Slander of Title**

On appeal, Connolly's only slander of title argument is based on the unilateral interference of her redemption rights through the filing of the expungement affidavit. To prove slander of title, the plaintiff must make a showing that "the defendant maliciously published false statements that disparaged a plaintiff's right in property, causing special damages." *B & B Inv. Group v. Gitler*, 229 Mich. App. 1, 8 (Mich. Ct. App. 1998). To prove malice, "the plaintiff must show that the defendant knowingly filed an invalid lien with the intent to cause the plaintiff injury." *Stanton v. Dachille*, 186 Mich. App. 247, 262 (Mich. Ct. App. 1990). Most importantly, the statute of limitations on a slander of title claim is one year. *Bonner v. Chicago Title Ins. Co.*, 194 Mich. App. 462, 469 (Mich. Ct. App. 1992).

In this case, the affidavit of expungement was executed on December 8, 2010. The complaint was filed on April 24, 2012; therefore, any invalid lien filed prior to April 24, 2011 would be time-barred. Since Connolly only raises the slander of title issue based on the expungement affidavit, the statute of limitations prevents her claim because the affidavit was executed before April 24, 2011. Even if it were within the applicable time frame, the

---

[13] Connolly stated tangentially that all false assignments were a slander of her property, therefore, giving her standing to question the mortgage assignments. Connolly failed to give support for this allegation; therefore, in accordance with Rule 28 of the Rules of Appellate Procedure, we treat this claim as waived on appeal. Fed. R. App. P. 28. *See Langley v. DaimlerChrysler Corp.*, 502 F.3d 475, 483 (6th Cir. 2007) (Daughtrey, McKeague, Reeves).

expungement affidavit was valid and there is no evidence that it was filed with the intent to cause Connolly injury. Accordingly, we affirm the district court's denial of Connolly's slander of title claim.

## III

For the reasons stated above, the district court's grant of Deutsche's motion for summary judgment is **AFFIRMED**. The district court's denial of Connolly's motion for partial summary judgment is **AFFIRMED**. The district court's denial of Connolly's motion for reconsideration is **AFFIRMED**.