**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

File Name: 16a0690n.06

Case No. 16-1327

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

Dec 20, 2016
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| FREDERICK WUORI; LORI WUORI, | ) | |
| | ) | |
| Plaintiffs-Appellants, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| WILMINGTON SAVINGS FUND | ) | THE WESTERN DISTRICT OF |
| SOCIETY, dba Christiana Trust, | ) | MICHIGAN |
| Trustee of BCAT 2014-4TT, | ) | |
| | ) | |
| Defendant-Appellee. | ) | |

BEFORE: COLE, Chief Judge; BOGGS and SILER, Circuit Judges.

**BOGGS, Circuit Judge.** Plaintiffs Frederick and Lori Wuori appeal from an order granting Defendant Wilmington Savings Fund Society's motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6). The Wuoris claim quiet title to a twenty-acre parcel of land in Houghton County, Michigan, which the Wuoris acquired unencumbered in fee simple absolute but subsequently mortgaged to Mortgage Electronic Registration Systems (MERS), from which, through a series of mesne assignments,[1] Wilmington purchased the mortgage and then foreclosed upon it. The district court held that even if all the facts pleaded in the Wuoris' complaint were

---

[1] Mesne assignments are assignments through intermediary parties. In a series of mesne assignments, the original holder of a property interest assigns that interest to another, who may assign the interest to another, and so on, before the final assignment of the property interest to its current holder. *See Twentieth Century Mach. Co. v. Loew Mfg. Co.*, 243 F. 373, 373 (6th Cir. 1917) (referring to "direct" and "mesne" assignments); *see also Hamer v. Sidway*, 27 N.E. 256, 256 (N.Y. 1891).

true, the Wuoris—who continue to occupy the land despite not having made a single mortgage payment in more than seven years—could not show superior title over Wilmington, and thus could not state a claim plausibly showing their entitlement to relief. For the reasons discussed below, we affirm.

I

Lori Wuori's parents granted the twenty-acre parcel to the Wuoris free and clear in February 1998. The deed, recorded in July 1998, properly described the property as "the north half (N ½) of the northeast quarter (NE ¼) of the northeast quarter (NE ¼) of section thirty-six (36), township fifty-six (56) north of range thirty-four (34) west, containing 20 acres, more or less." On February 18, 2004, the Wuoris executed a mortgage on the property in favor of MERS as security for a $133,082 loan they received. The *mortgage*, however, despite including the property's correct street address, erroneously included an extra "of the northeast quarter (NE ¼)" in its property description: "The North Half (N ½) of the Northeast Quarter (NE ¼) of the Northeast Quarter (NE ¼) *of the Northeast Quarter (NE ¼)* of Section Thirty-six (36), Township Fifty-six (56) North of Range Thirty-four (34) West, containing 20 acres, more or less" (emphasis added). This property description is thus incoherent, at once describing five acres of property (one half of one quarter of one quarter of one quarter of a 640-acre section being five acres) but then calling it "20 acres, more or less."

To cure this "scrivener's error," MERS recorded a "scrivener's affidavit"[2] in August 2009, executed by an agent of Fidelity National Title Group and not signed by the Wuoris, attesting that the correct legal description of the mortgaged property was the twenty-acre

---

[2] By statute, Michigan allows any competent "person who has knowledge of the relevant facts" to record an affidavit to correct "[s]crivener's errors and scrivener's omissions" in "previously recorded documents," subject to the conditions set forth in the statute. M.C.L. § 565.451d(1)(b).

description and not the five-acre description. While there is no indication from the record that the scrivener's affidavit was sent to or served upon the Wuoris, they did not object to the affidavit at any time after its filing and do not now argue that they lacked notice of the affidavit. In October 2009, following the Wuoris' default on their loan—which then bore an outstanding balance of $133,461.60—MERS foreclosed upon the mortgage, held a sheriff's sale of the twenty-acre parcel, and purchased the sheriff's deed after entering a high bid of $148,395.10. Unfortunately for MERS, the sheriff's deed contained the same property description as the mortgage: that is, it included the extra "of the northeast quarter" and described five rather than twenty acres of land, although with a proviso that the description was "[s]ubject to all exceptions, reservations, restrictions and conditions which remain in effect and which are contained in prior conveyance [sic] of record applicable to said property."

In August 2011, MERS executed and recorded an "expungement affidavit"[3] purporting to "correct record title" in order to expunge the 2009 foreclosure sale and reinstate the 2004 mortgage. No one objected. In 2012, MERS then assigned the 2004 mortgage to Bank of America, which assigned the mortgage to the Secretary of Housing and Urban Development, who assigned the mortgage to an entity called GCAT 2014-4, LLC, which in July 2015 assigned the mortgage to Wilmington. The assignment by MERS to Bank of America assigns MERS's interest in "a certain real estate mortgage made by [the Wuoris] . . . dated February 18, 2004, and recorded on March 1, 2004, in Liber 347 on Page 338, and modified by [the scrivener's] Affidavit or Order recorded on September 21, 2009 . . . ." But the later assignments, including the assignment to Wilmington, include only the same five-acre property description and proviso as in the 2009 sheriff's deed, although all the assignments include the correct street address.

---

[3] The affidavit is titled "Affidavit Expunging Sheriff's Deed on Mortgage Sale Filed Pursuant to MCLA 565.451a." We follow the district court in referring to the affidavit simply as an expungement affidavit.

The Wuoris, by their own admission, had not made any mortgage payments to anyone since before the 2009 foreclosure sale, so in October 2015—by which time the Wuoris owed $225,299.92 on the mortgage—Wilmington initiated its own foreclosure proceedings, purchasing a sheriff's deed to the property at a foreclosure auction after entering a winning bid of $132,000. *This* sheriff's deed describes the foreclosed mortgage as the February 18, 2004, mortgage "modified by [the scrivener's] Affidavit . . .;" includes the twenty-acre property description rather than the five-acre description; and grants to Wilmington "all the estate, right, title and interest, which [the Wuoris] had in said land . . . on the 18th day of February A.D. 2004, that being the date of said mortgage, or at any time thereafter." The Wuoris had until April 8, 2016, to redeem the property. Instead of redeeming it, however, they filed this suit against Wilmington, all the while continuing to reside on the land.

II

On November 13, 2015, the Wuoris filed their complaint against Wilmington in the Houghton County Circuit Court. The Wuoris brought a single count of quiet title, claiming that the 2009 foreclosure irrevocably extinguished the 2004 mortgage such that the expungement affidavit could not validly resurrect it, that the 2004 mortgage therefore did not exist, that the mesne assignments of the mortgage to Wilmington were "void ab initio," and that the Wuoris' property was thus "unencumbered."[4] Alternatively, the Wuoris argued that if the mortgage had indeed been resurrected by the expungement affidavit, the assignment to Wilmington was "voidable because the legal description was incorrect and thus not properly recorded." Wilmington timely removed the action to the United States District Court for the Western

---

[4] Even if the Wuoris are correct that the 2004 mortgage could not be resurrected and that the mesne assignments of the mortgage were void, the logical implication would not be that their land was "unencumbered" but rather that it, or at least five acres of it, belonged to MERS following the 2009 foreclosure sale.

4

District of Michigan and then moved to dismiss the Wuoris' complaint for failure to state a claim. Magistrate Judge Timothy P. Greeley granted the motion to dismiss and entered judgment for Wilmington, holding that the expungement affidavit was valid under Michigan law and thus prevented the Wuoris from establishing a prima facie claim for quiet title, and that the scrivener's error in the property description did not invalidate either the 2004 mortgage or Wilmington's sheriff's deed. Having reviewed Magistrate Judge Greeley's ruling de novo, we now affirm.

### III

To prevail on a claim for quiet title under Michigan law, a plaintiff must "show that he has title to the property superior to claims by others with an interest in the property." *Connolly v. Deutsche Bank Nat'l Trust Co.*, No. 12-12517, 2013 WL 4084742, \*20 (E.D. Mich. Aug. 13, 2013) (citing *Beulah Hoagland Appleton Qualified Pers. Residence Trust v. Emmet Cty. Rd. Comm'n*, 600 N.W.2d 698, 704 (Mich. Ct. App. 1999)), *aff'd*, 581 F. App'x 500 (6th Cir. 2014). To do so here, the Wuoris would need to state "the chain of title through which they claim ownership" of the twenty-acre parcel of land. *Beulah*, 600 N.W.2d at 700.

In their complaint, the Wuoris have attempted to establish a chain of title by arguing, essentially, that (1) they acquired the property free and clear, (2) they executed the 2004 mortgage in favor of MERS, (3) MERS extinguished that mortgage by foreclosing upon the property in 2009, (4) MERS received in foreclosure at most the five acres of land described in the 2009 sheriff's deed, leaving the Wuoris with quiet title as to the other fifteen acres, (5) MERS is now time-barred from exercising any rights under the 2009 sheriff's deed, because the five-year adverse-possession period under M.C.L. Section 600.5801(a) for claims of title by "some deed made upon the sale of the premises by . . . a sheriff upon a mortgage foreclosure

sale" has passed, leaving the Wuoris with quiet title as to the five acres as well, (6) the expungement affidavit cannot validly set aside the 2009 foreclosure or sheriff's deed or revive the 2004 mortgage, rendering the mesne assignments including the assignment to Wilmington "void ab initio," and (7) the Wuoris continue to possess the full twenty acres, thus giving them superior title over Wilmington.

As a matter of law, assuming the Wuoris cannot prevail on a theory of adverse possession, Wilmington prevails as to at least the five acres if the expungement affidavit revived the 2004 mortgage and allowed it to be assigned to Wilmington, and Wilmington prevails as to the full twenty acres unless the scrivener's error in the property description in the 2004 mortgage or in some of the mesne assignments prevented the 2015 foreclosure from deeding the full twenty acres to Wilmington.

*The Expungement Affidavit*

Under Michigan law, "any person having knowledge of the facts" may record in the office of the register of deeds an affidavit "stating facts relating to . . . [k]nowledge of the happening of any condition or event which may terminate an estate or interest in real property." M.C.L. § 565.451a(b). While other states have similar statutory provisions, only Michigan appears to interpret this provision to allow mortgagees who have foreclosed upon a mortgage to record an "expungement affidavit" that sets aside the foreclosure sale and sheriff's deed and reinstates the underlying mortgage, simply by stating in the affidavit, for example, that the sheriff's deed "must be expunged because the sheriff's sale was 'inadvertently held,'" *Connolly*, 2013 WL 4084742 at *1, or that the mortgagee "will not rely on said foreclosure sale and will

6

treat such sale as having not been held."[5]  *Freund v. Trott & Trott, P.C.*, No. 299011, 2011 WL 5064248 (Mich. Ct. App. Oct. 25, 2011) (quoting expungement affidavit) (affirming circuit court's grant of summary judgment to MERS and its lawyers where MERS had foreclosed upon borrowers who had not made any loan payments for several years and where MERS subsequently recorded an expungement affidavit setting aside the foreclosure sale and reinstating the underlying mortgage).

This is an admittedly curious practice, in part because the expungement affidavit is not stating facts about a "happening of any condition" that affects the land other than those facts *first stated in the affidavit itself*—that is, the affidavit is at once purporting to create a condition that affects the land (like the avoidance of a foreclosure) *and* attest to the happening of that condition.

Nevertheless, the practice has been upheld by the Michigan courts, and we have previously affirmed a district court's grant of summary judgment that upheld an expungement affidavit.  *Connolly*, 581 F. App'x at 505–08 (affirming grant of summary judgment for defendant Deutsche Bank where borrower asserted quiet title and other claims attacking Deutsche Bank's use of  an expungement affidavit to set aside a foreclosure sale and revive the underlying mortgage, and where Deutsche Bank subsequently foreclosed on the revived mortgage).

The Wuoris rely on a Michigan case, *Trademark Props. of Mich., LLC v. Fannie Mae*, 863 N.W.2d 344 (Mich. Ct. App. 2014), which held that a mortgagee's expungement affidavit in that case did not revive the underlying mortgage.  But *Trademark* is inapposite: first of all, when the mortgagee there (also MERS) foreclosed on the property (a condominium unit), it was not MERS that purchased the sheriff's deed but rather plaintiff Trademark Properties, which

---

[5] We note that the expungement affidavit in the present case also recites, verbatim, that the mortgagee "will not rely on said foreclosure sale and will treat such sale as having not been held."

acquired the deed for $6,761.45. *Id.* at 346–47. Then, after the foreclosure sale, the Michigan Court of Appeals issued an unrelated decision declaring that mortgagees (like MERS) who were not also noteholders could not lawfully foreclose, so MERS recorded an expungement affidavit purporting to declare the foreclosure sale void under Michigan law. *See Residential Funding Co., LLC v. Saurman*, 807 N.W.2d 412 (Mich. Ct. App. 2011) (*Saurman I*). But the Michigan Supreme Court later reversed that decision, holding that mortgagees like MERS could indeed foreclose even if they were not also the lender or noteholder. *Residential Funding Co., LLC v. Saurman*, 805 N.W.2d 183, 184 (Mich. 2011) (*Saurman II*). All *Trademark* stands for is the proposition that MERS's expungement affidavit *in that case*, which had expressly (and at the time, correctly) stated that *Saurman I* rendered MERS's foreclosure and sheriff's deed "void ab initio," was ineffective once *Saurman II* was decided, and that MERS could not use the expungement affidavit to reclaim title to the condominium unit from the entity that had purchased the sheriff's deed at the foreclosure sale. *See Trademark*, 863 N.W.2d at 347. *Trademark* does not, as the Wuoris argue, hold that "an affidavit cannot revive a previously extinguished mortgage" at all. Appellants' Br. 15. The district court thus properly concluded that the expungement affidavit was valid.

The Wuoris further argue, however, that even if the expungement affidavit is valid, it creates only a rebuttable presumption that the facts sworn therein are true, and the district court thus erred in taking those facts to be true at the motion-to-dismiss stage because "contradictory evidence could be presented to rebut the claims" in the affidavit, which "would require the holding of further proceedings." Appellants' Br. 12–13. The Wuoris' disagreement with the effect of the expungement affidavit, however, does not constitute "contradictory evidence" to the facts stated therein, and under current pleading standards the Wuoris would have had to plead

contradictory statements in their complaint rather than assert the mere possibility that they might present such evidence (whatever that might be) in the future. *See Ashcroft v. Iqbal*, 556 U.S. 662, 667 (2009). The district court thus properly held that the Wuoris did not plead sufficient facts to state a claim for quiet title based on the invalidity of the expungement affidavit.

*The Scrivener's Error*

The Wuoris argue that even if the expungement affidavit is sufficient to set aside the 2009 foreclosure and sheriff's deed and to revive the 2004 mortgage, the district court erred in granting the motion to dismiss because Wilmington could have acquired title to at most five acres and not the whole twenty-acre parcel. The Wuoris renew their pleading-standards argument that the 2009 scrivener's affidavit, which purported to amend the property description in the 2004 mortgage to remove the extra "of the northeast quarter (NE ¼)" and thus to describe twenty acres rather than five, creates only a *rebuttable presumption* that the property MERS foreclosed on was twenty acres rather than five, and that the district court wrongly "made assumptions that were not the most favorable to the [Wuoris]" when it assumed the parties intended all twenty acres to be encumbered. Appellants' Br. 11. This argument fails, however, because the Wuoris did not plead any facts in their complaint that would in any way support the proposition that the Wuoris only intended to encumber five acres of their land when they executed the 2004 mortgage.

The Wuoris rely on *OneWest Bank, FSB v. Jaunese*, No. 320037, 2015 WL 1277006 (Mich. Ct. App. Mar. 19, 2015), in which the property description in a mortgage included in part, the "South ½ of the Northwest ¼ of the West ½ of the Northeast ¼ of the Southwest ¼, of Section 3 . . ." instead of the "South ½ of the Northwest ¼, *also* West ½ of the Northeast ¼ of the Southwest ¼ . . . ," *id.* at *1, resulting in the description of 2.5 acres of vacant land instead of

9

the full 106-acre parcel that was improved with a house and other structures. A year after the homeowner-borrower died, the original mortgagee assigned the mortgage, unchanged, to MERS as nominee for Financial Freedom Acquisition (FFA). *Id.* at *2. After the borrower's wife died and the borrower's personal representative was unable to pay the debt secured by the mortgage, the personal representative quitclaimed all of the borrower's interest in the (properly described) property to the estate of the borrower's wife. *Id.* at *2–3. FFA initiated foreclosure-by-advertisement proceedings shortly thereafter, publishing notices with the 2.5-acre description. *Id.* at *3. Six months later, MERS assigned its interest in the mortgage to FFA. *Ibid.* FFA then held a sheriff's sale and purchased the sheriff's deed, which was recorded along with an affidavit including the 2.5-acre description. *Ibid.* Meanwhile, the personal representative of the borrower's wife quitclaimed the wife's interest in the property, with the correct 106-acre description, to the wife's sole heir. *Id.* at *4. Not until fifteen months after the foreclosure sale did FFA execute an expungement affidavit to set aside the sheriff's sale; FFA included the full 106-acre description in that affidavit and then assigned the mortgage to OneWest in an assignment including the 106-acre description. *Ibid.* A full eighteen months later, approximately *three years after* the initial foreclosure sale, OneWest sued the wife's estate and the wife's heir to reform the mortgage and to quiet title to the property. *Ibid.*

The trial court held that the doctrine of laches barred OneWest's suit, and that the equities generally favored the wife's heir over OneWest anyhow because no one had done anything to amend the property description *before* the foreclosure sale or for several years thereafter. *Id.* at *6. The Michigan Court of Appeals affirmed, holding that OneWest lacked standing (because, as the heir had argued—and to which OneWest failed to respond in its brief on appeal—FFA would have had to reform the deed before it assigned it to OneWest) and, alternatively, that

OneWest had unclean hands because it "stepped into the mess with eyes wide open" and "[e]ven then, OneWest delayed filing a complaint," and because OneWest "stood in the shoes of its predecessors," who had "failed to take due care" in assigning and foreclosing on the mortgage. *Id.* at *8–10. Moreover, the initial mortgage itself was tainted by allegations that the agent who signed the mortgage on the borrower's behalf had procured the late husband's power of attorney "through fraud, undue influence, and duress" over the husband and had actually received funds herself from the mortgagee (a suit by the wife's heir against the agent for fraud and breach of fiduciary duty was dismissed after the wife died). *Id.* at *2.

Although *OneWest* is superficially analogous to the Wuoris' case to the extent that both involve a mortgagee's (or assignee's) amendment to an erroneous property description, *OneWest* does not help the Wuoris. Unlike in *OneWest*, the Wuoris, who signed the mortgage themselves rather than through an agent of questionable capacity, had the opportunity to do something about the error in the property description when the scrivener's affidavit was recorded in August 2009, two months before the 2009 foreclosure. Further, unlike the lenders and mortgagees in *OneWest*, Wilmington does not have unclean hands nor has Wilmington done anything to tip the equities in the Wuoris' favor. Finally, unlike the borrower in *OneWest* who died before the shenanigans began, the Wuoris have witnessed the sequence of foreclosures, affidavits, and assignments affecting the property "with eyes wide open," while continuing to live on the property for free.

Further, the real question under Michigan law for the purpose of assessing the Wuoris' claim of quiet title is not whether the scrivener's affidavit is valid but whether the scrivener's error in the original mortgage invalidates the mortgage for failure to describe the property sufficiently. The Wuoris argue that it does. But we have held that under Michigan law, a property's common street address is "sufficiently specific . . . to allow the accurate ascertainment

of the mortgaged property," *Bazinski v. JPMorgan Chase Bank*, 597 F. App'x 379, 381 (6th Cir. 2015), even despite an "incorrect metes-and-bounds description," *Veasley v. Fed. Nat'l Mortg. Ass'n*, 623 F. App'x 290, 296 (6th Cir. 2015), unless the mortgagors can demonstrate that they were "prejudiced by defendant['s] failure to include the correct metes-and-bounds description in the mortgage." *Veasley*, 623 F. App'x at 297 (citing *Kim v. JPMorgan Chase Bank*, 825 N.W.2d 329, 337 (Mich. 2012)). And here, the mortgage, the 2009 and 2015 foreclosure-sale documents, and every single assignment included the property's correct street address, along with either the proper property description or the mistaken one, which still said "20 acres, more or less." The Wuoris have not pleaded any facts showing that they were prejudiced by the erroneous property description or giving rise to any possible (let alone plausible) inference of prejudice, and the district court properly held that the 2004 mortgage was not invalidated by the erroneous property description.

Finally, we note that even if Wilmington only acquired five of the twenty acres through the mesne assignments, and even if the adverse-possession statute somehow allowed the Wuoris to regain title as to those five acres, that still would not help the Wuoris, whose sole claim is for quiet title to the full twenty-acre parcel, because the Wuoris would still be unable to meet their burden of describing a chain of title that would establish superior title over Wilmington for the full twenty-acre parcel.

IV

In sum, the district court properly granted Wilmington's motion to dismiss. The Wuoris executed a mortgage in favor of MERS in 2004 as security for a loan on which they have made no payments in over seven years. MERS validly foreclosed on the mortgage in 2009 and then validly recorded an expungement affidavit in 2011 that set aside the 2009 foreclosure, reviving

12

the 2004 mortgage, which Wilmington validly acquired through a series of mesne assignments. That the property description in the 2004 mortgage, the 2009 sheriff's deed, and some (but not all) of the mesne assignments had an extra phrase in it did not prevent it from describing the full twenty-acre property. Thus, the Wuoris cannot show that they have superior title over Wilmington. The district court's dismissal of the Wuoris' complaint is AFFIRMED.