# STATE OF MICHIGAN

# COURT OF APPEALS

US BANK NATIONAL ASSOCIATION,

      Plaintiff/Counter Defendant-
      Appellee,

v

DEBORA D. CURTIS, f/k/a DEBORAH D.
RUCKES, and DOUGLAS CURTIS,

      Defendants/Counter Plaintiffs-
      Appellants.

UNPUBLISHED
November 3, 2015

No. 322508
Oakland Circuit Court
LC No. 2013-134857-CH

Before: GLEICHER, P.J., and SAWYER and MURPHY, JJ.

PER CURIAM.

In this action involving certain real property located in West Bloomfield, defendants appeal as of right from the circuit court's[1] grant of summary disposition to plaintiff under MCR 2.116(C)(7) (statute of limitations) (C)(8) (failure to state a claim) and (C)(10) (no genuine issue of material fact) with respect to plaintiff's complaint and defendants' counter complaint. This action followed plaintiff's foreclosure by advertisement and sale of real property owned by defendant Deborah Ruckes[2] and inhabited by Ruckes and her husband, defendant Douglas Curtis, pursuant to a mortgage signed by Ruckes. We affirm.

## I. FACTUAL BACKGROUND

On July 21, 2005, Ruckes executed a note and mortgage with plaintiff's predecessor in interest, First Franklin, a division of the National City Bank of Indiana, whereby First Franklin loaned Ruckes $247,500 in exchange for Ruckes's granting First Franklin a security interest in certain real property located in West Bloomfield. Both the note and mortgage contained

---

[1] The action began as a summary eviction proceeding brought by plaintiff in district court but was removed to circuit court following defendants' filing of their counter complaint.

[2] Curtis is her surname following her marriage to Douglas Curtis. We will refer to her as Ruckes so as to forestall any confusion, given the circumstances of the case.

-1-

"Adjustable Rate Riders" that provided the interest rate on the loan would be a fixed 7.5% during the first two years, but that it would be adjusted with the market rate thereafter. The note also contained an "Interest Only Payment Period Note Addendum" that provided Ruckes's payments during the first 60 months would be interest only payments, the first 24 months at the fixed 7.5%, and the next 36 months at the variable rate. Beginning in the sixth year, principal payments would be added. Ruckes signed and dated both documents, the riders, and the addendum.

Ruckes also received and signed on July 21, 2005, a Federal Truth in Lending Disclosure Statement. The disclosure explained that Ruckes would need to make 24 payments of $1,546.87, followed by 36 payments of $2,114.06, followed 299 payments of $2,292.80, followed by one payment of $2,291.56. The disclosure also showed that while the note rate was 7.5%, the Annual Percentage Rate (APR) was 9.8946%, and provided the following explanation:

> THE ANNUAL PERCENTAGE RATE (APR) IS NOT THE SAME AS THE INTEREST RATE (NOTE RATE) OF THE MORTGAGE FOR WHICH YOU APPLIED. THE NOTE RATE DESCRIBES ONLY THE INTEREST. THE APR, WHICH IS USUALLY HIGHER, INCLUDES OTHER ITEMS SUCH AS DISCOUNT POINTS, FEES, FINANCE CHARGES And CERTAIN OTHER CHARGES WHICH ARE REQUIRED TO BE PAID TO OBTAIN THE LOAN.

On June 2, 2008, plaintiff and Ruckes entered a modification agreement whereby accumulated interest payments in the amount of $4,536.14, which had not been paid by Ruckes, were added to the full principal balance of the loan in exchange for plaintiff's agreeing to return the interest rate to a fixed 7.5% for another two years. The modification agreement stated that the rate would return to a variable rate at the conclusion of the two years.

Ruckes was sent a demand letter on July 18, 2011, by certified mail, stating that she had two months of delinquent payments totaling $4,126.34, and that she was, therefore, in default under the terms of the note and the mortgage. She was informed that she could cure the default by paying the delinquent payments plus late charges and accrued interest for a total of $4,303.58. Several months later, Ruckes received a further notice, this time from plaintiff's legal counsel, stating that it contained important information required by state law. The letter stated that Ruckes presently owed $12,514.02 in payments due under the mortgage loan, the majority of which were delinquent payments, but also included escrow payments and late charges. The letter provided information regarding the Michigan State Housing Development Authority, legal aid, and the State Bar of Michigan. The letter also stated that if Ruckes requested a meeting with legal counsel, they would provide her with documents that if not returned in 60 days from the date of the notice, February 9, 2012, would result in foreclosure proceedings. Appended to the letter in plaintiff's brief in support of summary disposition is a scanned image of the delivery information, which included a signature identified as that of the recipient.

Plaintiff advertised the pending foreclosure sale in the Oakland County Legal News on March 16, 2012, March 23, 2012, March 30, 2012, and April 6, 2012. Plaintiff also posted a notice on the front door of the premises on March 17, 2012.

The foreclosure sale was conducted on August 7, 2012 at 10 a.m. Plaintiff was the highest bidder and paid $268,894.72 for the property. A sheriff's deed was executed giving plaintiff title to the property. The redemption period was set to expire on February 7, 2013.

Plaintiff filed a summons seeking to evict defendants in the 48th District Court on February 28, 2013. Defendants answered and filed a counter complaint. The counter complaint contained five counts, one for fraudulent misrepresentation, one for breach of contract, one for violation of the Federal Real Estate Settlement Procedures Act (RESPA)[3] and the Truth in Lending Act (TILA),[4] one for violation of 15 USC 1639, and one for violation of MCL 600.3204. Later, defendants filed an amended counter complaint adding three more counts. A subsequent amended counter complaint also stated causes of action for injunctive relief, slander of title, and to quiet title. The case was then transferred to Oakland Circuit Court.

The trial court granted plaintiff summary disposition on its complaint under MCR 2.116(C)(10). It also granted plaintiff summary disposition on defendants' counter complaint, dismissing each complaint under the appropriate section of MCR 2.116(C), including subsections (7), (8), and (10). Defendants now claim error.

## II. STANDARDS OF REVIEW

This Court "reviews the grant or denial of summary disposition de novo to determine if the moving party is entitled to judgment as a matter of law." *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999).

### A. MCR 2.116(C)(7)

A trial court may grant a party's motion for summary disposition if relief is appropriate because the statute of limitations has passed. MCR 2.116(C)(7). The allegations in the complaint are accepted as true absent contradictory evidence. *Odom v Wayne Co*, 482 Mich 459, 466; 760 NW2d 217 (2008). "If any affidavits, depositions, or other documentary evidence are submitted, the court must consider them to determine whether there is a genuine issue of material fact." *Dextrom v Wexford Co*, 287 Mich App 406, 429; 789 NW2d 211 (2010).

### B. MCR 2.116(C)(8)

"A motion under MCR 2.116(C)(8) tests the legal sufficiency of the complaint." *Maiden*, 461 Mich at 119. The plaintiff's factual allegations are accepted as true and the motion may only be granted where "no factual development could possibly justify recovery." *Id.* "[C]onclusory statements that are unsupported by allegations of fact on which they may be based will not

---

[3] 12 USC 2601 *et seq*.

[4] 15 USC 1601 *et seq*.

suffice." *State v CVS Caremark Corp*, 496 Mich 45, 63; 852 NW2d 103 (2014). The court must also accept all reasonable inferences that can be drawn from the factual allegations as true. *Id.*

## C.  MCR 2.116(C)(10)

A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint." *Maiden*, 461 Mich at 120. "In presenting a motion for summary disposition, the moving party has the initial burden of supporting its position by affidavits, depositions, admissions, or other documentary evidence." *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996). If the moving party meets this burden, the party opposing the motion has the burden "to establish that a genuine issue of disputed fact exists." *Id.* "A litigant's mere pledge to establish an issue of fact at trial cannot survive summary disposition under MCR 2.116(C)(10)." *Maiden*, 461 Mich at 121. It is necessary to "set forth specific facts at the time of the motion showing a genuine issue for trial." *Id.* The court considers the documentary evidence in a light most favorable to the non-moving party. *Id.* at 120.

## III.  ANALYSIS

### A.  FACTUAL INACCURACIES IN DEFENDANTS' ARGUMENTS

Before getting into the legal merits of this appeal, we take the time to address several factual inaccuracies that form the basis of many of defendants' arguments. Defendants assert that Ruckes was promised a 7.5% interest rate on the loan but was actually charged in excess of 9%. This argument is premised on a misunderstanding regarding the actual interest rate on the loan and the APR. The truth in lending disclosure clearly explains that although the actual interest Ruckes paid would be 7.5% of the principal, once additional fees were added, the amount she paid actually became closer to 9.8946% of the principal (the APR). Furthermore, the 7.5% interest rate was only guaranteed during the first two years of the loan and during the two years immediately following the modification agreement.

Defendants also allege that the mortgage Ruckes signed was a negative amortization mortgage, that is, that her payments did not represent the full amount of interest and fees due such that unpaid interest would increase the balance of the principal over the life of the loan. There is no evidence in the record that suggests plaintiff was given a negative amortization loan. The evidence shows that she was given an interest only loan for the first five years of the mortgage. As the truth in lending disclosure shows, had Ruckes made the payments as planned she would have had the loan fully paid off and it would have been fully amortized by the end of 30 years. The fact that no principal payments were made in the first five years does not mean the loan was a negative amortization loan. It merely means that Ruckes was to pay a larger amount of interest over the life of the loan than if she had made principal payments up front.

### B.  PLAINTIFF'S COMPLAINT

Defendants make no argument regarding whether they were in default on the mortgage. Instead, they argue first that they are allowed to assert their counter claims as a defense to eviction notwithstanding the passing of the statutory six-month redemption period, and second

that the redemption period cannot expire because plaintiff bid in excess of the value of the property.

Our Supreme Court has held "that [the] validity of the [foreclosure] sale may be tested in a summary proceeding based thereon." *Reid v Rylander*, 270 Mich 263, 267; 258 NW 630 (1935). However, it also cautioned that the validity may only be tested "insofar as the invalidity appears in the procedure." *Id.* The "underlying equities, if any, bearing on the instrument," the Court explained, "cannot be made triable issues in a summary proceeding." *Id.*

To the extent defendants' counter claims are based on the validity of the foreclosure sale and not the underlying equities on the instrument, which would preclude them from being raised in the summary proceeding, any error would merely render the sale voidable. See *Kim v J P Morgan Chase Bank*, 493 Mich 98, 113-114; 825 NW2d 329 (2012) (instructing that defective mortgage foreclosures are not void *ab initio* but merely voidable). Therefore, even if some of defendants' counter claims have merit, they would at most result in voidable title being held by plaintiff.

Further, defendants have not established prejudice, i.e., they have not shown that they would have been in a position to preserve an interest in the property absent the allegedly invalid foreclosure sale. Defendants only make blanket and unsupported assertions about how they would have qualified for a modification. No information is contained in the record to support this assertion, such as what plaintiff's requirements for modification are, what defendants' combined income or assets are, and how those income and assets would be sufficient to qualify for the modification and enable defendants to make the necessary payments. Additionally, the disclosure makes abundantly clear that this was an interest only loan during the first 60 months and that the payments would increase after 24 and 60 months.

Defendants also contend that because plaintiff paid more than the value of the property, the redemption period can never run. Defendants cite one unpublished case as support for this assertion. Notwithstanding the unpublished nature of the case, it does not stand for the proposition that defendants assert. That case merely held that a mortgagee who bids the full value or more of the mortgage at the foreclosure sale cannot later collect insurance proceeds for damage that occurred prior to the foreclosure sale. The Court reasoned that if the mortgagee chose to bid the full value of the debt, the mortgage was extinguished and any additional amounts received from an insurance company for damage belonged to the mortgagor who was the lawful owner of the property at the time the right to those proceeds accrued.

## C. DEFENDANTS' COUNTER COMPLAINT

Defendants have appealed the trial court's grant of summary disposition on their claims based on alleged violations of TILA, 15 USC 1639(h), and MCL 600.3204, as well as a claim for slander of title, a claim for breach of contract, a claim to quiet title, and a request for injunctive relief.

## 1. TILA

> Notwithstanding any other provision of law, when a creditor, assignee, or other holder of a residential mortgage loan or anyone acting on behalf of such creditor, assignee, or holder, initiates a judicial or nonjudicial foreclosure of the residential mortgage loan, or any other action to collect the debt in connection with such loan, a consumer may assert a violation by a creditor of paragraph (1) or (2) of section 129B(c) [15 USCS 1639b(c)], or of section 129C(a) [15 USCS 1639c(a)], as a matter of defense by recoupment or set off without regard for the time limit on a private action for damages under subsection (e). [15 USC 1640(k)(1).]

Alleged violations of 15 USC 1639, 1639b or 1639c may be brought before the end of a three-year period beginning when the violation occurred. 15 USC 1640(e). Alleged violations of 15 USC 1640 may be brought before the end of a one-year period beginning when the violation occurred. 15 USC 1640(e).

Because defendants' asserted a violation of TILA as a defense by recoupment or set off, any claimed violations of 15 USC 1639b(c) and 15 USC 1639c(a), may be asserted notwithstanding the statute of limitations. 15 USC 1640(k)(1). Therefore, it becomes necessary to determine if the trial court properly granted summary disposition regarding this claim under MCR 2.116(C)(10).

Defendants have not asserted what specific sections of TILA plaintiff allegedly violated. Defendants argue that the interest rate charged was higher than 7.5%, which we have explained is erroneous.

They also assert that the loan would have required Ruckes to pay in excess of 33% of her monthly income. Although they do not draw a specific connection to, and violation of federal law, defendants cite 15 USC 1639b(c) and 15 USCS 1639c(a). Assuming that defendants' allegation that the loan would have required Ruckes to pay in excess of 33% of her monthly income, this does not constitute a violation of 15 USC 1639b(c), which prohibits a residential mortgage loan originator from receiving certain incentives. Defendants' allegations could form a violation of 15 USCS 1639c(a) under a broad interpretation of its provisions. Section 1639c(a) requires creditors to ensure borrowers have an ability to repay by verifying income and, through other methods, ensuring that the borrower has the ability to repay. However, defendants have failed to articulate a legal theory for a violation of § 1639c(a).

Further, the facts asserted in defendants' brief on appeal are not supported by the record. The copy of Ruckes's loan application in the record is initialed by Ruckes on every page, signed by her, and appears to state that her monthly income was $8,216.25. Thirty-three percent of that amount would equal $2,711.36. This is greater than the largest amount Ruckes would have been required to pay under the original payment plan of $2,292.80.

Further, defendants have introduced no evidence that plaintiff illegally inflated the balance of her loan. The only information in the record that shows unpaid interest being added

to the premium is the modification agreement. And Ruckes agreed to this addition of principal in a contract in exchange for having an additional two years with a fixed note rate of 7.5%.

## 2. 15 USC 1639(h)

A creditor shall not engage in a pattern or practice of extending credit to consumers under mortgages referred to in section 103(aa) based on the consumers' collateral without regard to the consumers' repayment ability, including the consumers' current and expected income, current obligations, and employment. [15 USC 1639(h).]

The one-year statute of limitations to assert violations of 15 USC 1639(h) "does not bar a person from asserting a violation of this title [15 USCS 1601 *et seq*.] in an action to collect the debt . . . as a matter of defense by recoupment or set-off in such action, except as otherwise provided by State law." 15 USC 1640(e). Because defendants have asserted the violation of 15 USC 1639(h) as a defense in the action to collect on the debt, they are not barred by the statute of limitations.

Below, defendants asserted that the basis of their § 1639(h) claim is that plaintiff locked Ruckes into a "negative amortization loan." As this is an erroneous assertion, this claim of error is without merit.

## 3. MCL 600.3204

Defendants also argue that Ruckes was not given a notice that was required at the time under sections of Michigan law that have now been repealed, MCL 600.3204(4), 600.3205, and 3205a, but were in effect when the mortgage was foreclosed. Prior to the amendment, MCL 600.3204(4) required a foreclosing party to send a notice to the mortgagor as required in MCL 600.3205a. Section 3205a required a foreclosing party to send the borrower a written notice providing certain information, including the opportunity to request a meeting to attempt to work out a modification. MCL 600.3205 provided that prior to foreclosure a mortgage servicer or holder needed to designate an employee or entity to facilitate negotiations and meetings with the borrower.

The evidence in the record shows that a mailing sent certified mail, return receipt requested, was mailed to and received by Ruckes. That letter provided information on how to contact a housing counselor and how to request a meeting to work out a possible modification. Contrary to defendants' assertions, nothing in the statutory scheme required plaintiff to offer Ruckes a modification.[5] Moreover, the record shows that Ruckes was given a modification but again ended up being delinquent on payments.

---

[5] At most MCL 600.3205c, repealed by 2012 PA 521, required plaintiff to consider the possibility of a modification before foreclosure.

## 4. SLANDER OF TITLE

"To establish slander of title at common law, a plaintiff must show falsity, malice, and special damages, i.e., that the defendant maliciously published false statements that disparaged a plaintiff's right in property, causing special damages." *B & B Investment Group v Gitler*, 229 Mich App 1, 8; 581 NW2d 17 (1998). Because defendants' counter complaint did not allege that plaintiff published false statements that disparaged Ruckes's right to property, the trial court did not err in granting plaintiff summary disposition on this claim.

## 5. BREACH OF CONTRACT

"The essential elements of a contract are parties competent to contract, a proper subject matter, legal consideration, mutuality of agreement, and mutuality of obligation." *Mallory v Detroit*, 181 Mich App 121, 127; 449 NW2d 115 (1989). Defendants argue that plaintiff breached this contract by charging her over 9% interest when the contractually agreed rate was 7.5% and by failing to make required disclosures. This allegation again confuses the note rate and the APR. Furthermore, the adjustable rate rider to the mortgage clearly stated that the interest rate was only required to remain at 7.5% for the first two years of the mortgage. And while the modification agreement returned the adjustable rate to a fixed 7.5%, it was only for two years. Defendants have produced no evidence that these contractual provisions were broken. Defendants' claim that this is a breach of contract is without merit.

## 6. QUIET TITLE

"In an action to quiet title, the plaintiffs have the burden of proof and must make out a prima facie case of title." *Beulah Hoagland Appleton Qualified Personal Residence Trust v Emmet Co Rd Comm*, 236 Mich App 546, 550; 600 NW2d 698 (1999). If successful, the burden then shifts to the opposing party to show a "superior right or title in themselves." *Id.* Because defendants asserted their quiet title action in a counter complaint, they had the burden of making out a prima facie case of title.

No evidence in the record supports defendants' claim for title. The sheriff's deed clearly vests title of the property in plaintiff. Defendants argue that they should receive title because defendant engaged in fraud, deceit, and violations of statutes. However, defendants have not provided any evidence to support these allegations and establish that plaintiff has rights in the property, let alone the superior right that is required to prevail in a quiet title action. *Id*.

## 7. INJUNCTIVE RELIEF

Finally, the trial court properly denied defendant's request for injunctive relief. "Equity looks at the whole situation and grants or withholds relief as good conscience dictates." *Thill v Danna*, 240 Mich 595, 597; 216 NW 406 (1927). "The function of courts of equity is to do justice, not injustice." *Fox v Jacobs*, 289 Mich 619, 623; 286 NW 854 (1939). In a proper case, hardship may be considered a factor in a court's determination of whether to apply its equitable powers. *Etherington v Bailiff*, 334 Mich 543, 554; 55 NW2d 86 (1952). " 'A court of equity will not relieve a party from the consequences of a risk which he voluntarily assumes.' " *Blunt v*

*Auditor General*, 324 Mich 675, 680; 37 NW2d 671 (1949), quoting *McCredie v Buxton*, 31 Mich 383, 388 (1875).

  In the present case, there was no reason for the trial court to grant an injunction or otherwise invoke powers of equity to preclude plaintiff from its legal right to claim possession of property that it had legally foreclosed on under its clear legal right to do so. Ruckes voluntarily and knowledgably entered into a mortgage that had substantial increases in payments scheduled after the introductory interest only period. Her failure to make those payments invoked plaintiff's security interest and it had a clear legal right to foreclose on the property. Equity should not relieve Ruckes from the consequences of the risk she voluntarily assumed.

  Affirmed.

/s/ Elizabeth L. Gleicher
/s/ David H. Sawyer
/s/ William B. Murphy
